**Raymond MANNING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00013–CR.**

Court of Appeals of Texas, Texarkana.

Submitted March 1, 2002.

Decided June 19, 2002.

---

Larry P. Urquhart, Moorman, Tate, Moorman, Urquhart & Haley, Brenham, for Appellant.

Jorge L. Matos Ortiz, Assistant District Attorney, Bellville, for The State.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice GRANT.

Raymond Manning appeals his conviction of manslaughter arising out of a vehicular collision involving an eighteen-wheeler. A jury found Manning guilty and assessed his punishment at ten years' confinement.

Manning argues the evidence was legally insufficient to support his conviction. He contends the trial court erred in permitting the State to introduce evidence showing the presence of a cocaine metabolite in his blood and in denying his request for a limiting instruction on that evidence. Manning also contends the trial court erred by permitting certain reputation testimony during the punishment phase of the trial.

Testimony at trial presented the following: Manning failed to apply the brakes of the eighteen-wheeler he was driving when he approached a lane of vehicles stopped for road construction. The eighteen-wheeler collided with a Chevrolet Tahoe, killing the passenger. A total of eight vehicles were involved.

One witness, Michael Krebs, had been driving behind the eighteen-wheeler for some time and testified the right wheels of the truck left the pavement to the right side of the road before he and Manning had turned onto the highway where the accident took place. Another witness,

Charles La Bernz, was driving behind Krebs. Both witnesses testified they saw road construction signs as far as 3,000 feet before the road construction. Krebs looked around the eighteen-wheeler and noticed a line of vehicles stopped in their lane to allow traffic to pass through the construction zone in the opposite direction. The witnesses did not see any signs that Manning applied the brakes or attempted to slow down. The eighteen-wheeler continued at the same speed, until it collided with the last car stopped in the line waiting on construction.

Trooper Gerald Brown, the officer in charge of the investigation, testified Manning's eyes were bloodshot. Sergeant Larry Matthews took Manning to the local hospital and testified Manning dozed while on the way back to the accident scene. Lisa Le Doux, the hospital laboratory technician, drew Manning's blood and testified that Manning appeared to fall asleep and snore while she was processing the sample. The specimen Manning provided contained a cocaine metabolite.

In his first point of error, Manning argues the evidence was legally insufficient because it failed to establish the mental state of recklessness required for manslaughter. Manning contends the evidence was only sufficient to support a finding of criminal negligence, there was a risk that he should have recognized, but failed to, and his conviction should therefore be reformed to reflect a conviction of criminally negligent homicide.

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979). This calls on the court to

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

■ Under TEX. PEN.CODE ANN. § 19.04 (Vernon 1994), a person commits the offense of manslaughter if he recklessly causes the death of an individual. The jury was instructed that

A person acts "recklessly," or is "reckless," with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances, as viewed from the actor's standpoint.

For a person to be deemed to be "reckless," there must actually be both a substantial and an unjustifiable risk that the result complained of will occur and that the person acting was actually aware of such risk and consciously disregarded it.

■ TEX.CODE CRIM. PROC. ANN. art. 21.15 (Vernon 1989) provides that "[w]henever recklessness … enters into or is a part or element of any offense, … [the] indictment in order to be sufficient … must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness...." Because the charge to the jury included several disjunctive means of recklessness, "by failing to control a motor vehicle[,] or by failing to keep a proper lookout for another motor vehicle, or by driving a motor vehicle without sufficient sleep[,] or by the consumption of a controlled substance, …" the jury's verdict will not be reversed for insufficiency if the evidence is sufficient regarding at least one of the alternatives. *See Brooks v. State*, 990 S.W.2d 278, 283 (Tex.Crim.App. 1999); *Hathorn v. State*, 848 S.W.2d 101, 108 (Tex.Crim.App.1992); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991); *Wheeler v. State*, 35 S.W.3d 126, 133 (Tex.App.-Texarkana 2000, no pet.).

■ The trier of fact makes its determination of culpable mental state from all of the circumstances and may make reasonable inferences from the acts, words, and conduct of the accused. *See Arellano v. State*, 54 S.W.3d 391, 393 (Tex.App.-Waco 2001, pet. ref'd) (sufficient evidence of recklessness where visible signs of reduced speed and skid marks showed excessive speed); *Trepanier v. State*, 940 S.W.2d 827, 830 (Tex.App.-Austin 1997, pet. ref'd) (sufficient evidence of recklessness where driver moved onto shoulder to pass on the right); *Rodriguez v. State*, 834 S.W.2d 488, 490 (Tex.App.-Corpus Christi 1992, no pet.) (sufficient evidence of recklessness where defendant had told officer she took the turn too quickly).

■ There was evidence that Manning never applied the brakes, slowed down, or swerved when approaching a lane of stopped traffic, that there were signs alerting drivers to road construction up to 3,000 feet before the area where the traffic was stopped, and that drivers behind Manning were able to see the stopped line of traffic ahead of the eighteen-wheeler. There was also evidence that Manning swerved off the road before the accident, that his eyes were bloodshot shortly after the accident, and that he fell asleep on the way from

and at the hospital shortly after the accident. The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Manning was aware of and consciously disregarded the substantial and unjustifiable risk of failing to control a motor vehicle, or of failing to keep a proper lookout for another motor vehicle, or of driving a motor vehicle without sufficient sleep. Viewed in the light most favorable to the prosecution, the evidence is legally sufficient to show that Manning was reckless on at least one of the alternative means of recklessness alleged in the charge. Manning's first point of error is overruled.

In his next two points of error, Manning contends the trial court erred when it allowed the State to present evidence concerning the presence of a cocaine metabolite in Manning's blood. He first argues the metabolite evidence was irrelevant, and its probative value, if any, was substantially outweighed by its potential for unfair prejudice.

■ TEX.R. EVID. 402 provides that relevant evidence is generally admissible and irrelevant evidence is inadmissible. TEX.R. EVID. 401 defines relevant evidence to mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ The Legislature has determined that blood-sample evidence of a controlled substance is admissible, and therefore relevant and reliable, in criminal proceedings arising under Chapter 49 of the Penal Code or under Section 106.041 of the Alcoholic Beverage Code. *See* TEX. TRANSP. CODE ANN. § 724.064 (Vernon 1999); *see also Henderson v. State*, 14 S.W.3d 409, 411 (Tex.App.-Austin 2000, no pet.). But Manning was not charged with an offense under Chapter 49 of the Penal Code or under Section 106.041 of the Alcoholic Beverage Code.

Evidence of prior use of cocaine was relevant to the State's contention that the recklessness was the result of the consumption of a controlled substance. However, as further discussed, the evidence that the metabolite indicated causation is slight.

■ TEX.R. EVID. 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, although the evidence is otherwise relevant. The trial court's determination under the Rule 403 balancing test is only reversed for clear abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex.Crim.App.1999). However, the reviewing court must measure the ruling against relevant criteria. *Id.* The relevant criteria includes the following factors: (1) how compellingly the evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of the evidence; (2) the potential the evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, which breaks down into three subparts: (a) Does the proponent have other available evidence to establish the fact of consequence that the evidence is relevant to show? (b) How strong is that other evidence? (c) Is the fact of consequence related to an issue that is in dispute? *See Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex.Crim.App. 1990) (op. on reh'g).

The testimony relevant to the blood sample results was as follows. Laticia Cole, a crime laboratory technician, testified .15

mg/l of cocaine metabolite was found in Manning's blood sample. Cole testified that only ingesting cocaine or the metabolite would produce such a result. Glenn Harrison, a supervisor in the crime laboratory, testified that cocaine is an illegal drug used for euphoric effect. He explained that a metabolite is created as the body breaks down the cocaine molecule, that the dissipation rate is the rate at which the cocaine leaves the body and is referred to as a half-life (the clock time it takes for concentration of cocaine to decrease to one half its original concentration), that the metabolite for cocaine has a different half-life than does cocaine, that the half-life for the metabolite is 4.7 hours, and that age, but not weight, may affect the half-life. He also testified someone with .15 mg/l of the metabolite would not display any of the effects of cocaine. When asked why, he testified the metabolite does not exhibit the effects of cocaine. He testified that all the test result showed was that some time before the blood sample was taken, the person had ingested cocaine, but that there would have been no effects of cocaine at the point when the blood sample was taken. From the testimony of other witnesses, it was at least an hour and a half after the accident that the blood sample was taken. (The accident occurred at two o'clock p.m., Manning was transported to the hospital an hour after one witness arrived twenty to thirty minutes after the accident, and Manning was returned to the scene of the accident the same day.).

■■■■ The evidence was not compelling. There was no attempt to extrapolate the metabolite found in the blood sample back to the time of the accident. While failure to extrapolate does not render a specimen sample irrelevant, failure to present such evidence may be considered in weighing the probative value of the specimen against its potential for unfair prejudice under Rule 403 and may render the evidence insufficient to support the conviction. *See Forte v. State,* 707 S.W.2d 89 (Tex.Crim.App.1986); *Owen v. State,* 905 S.W.2d 434, 439 (Tex.App.-Waco 1995, pet. ref'd). The evidence the expert did provide served only to confuse or mislead the jury. The expert testified that at the level found in Manning's blood, one would not be experiencing the effects of cocaine. Although the expert testified the half-life of the metabolite is 4.7 hours, he also testified the metabolite itself does not exhibit any of the effects of cocaine. He did not provide any information to calculate when a metabolite is produced from the breakdown of cocaine in the body and did not provide the half-life of cocaine. The expert gave no indication of how long after the effects of cocaine wear off the metabolite would still be found in the blood. Although the State argued the jury could infer Manning was more drowsy than he otherwise would have been because of the consumption of cocaine at some time before the accident, there was no evidence as to when such cocaine was consumed or that one becomes drowsy as the effects of cocaine wear off or as cocaine is broken down in the body. Furthermore, although Trooper Brown testified Manning's eyes were bloodshot, there was no testimony suggesting the use of cocaine causes one's eyes to be bloodshot. The strength of the evidence in making it more or less probable that Manning was reckless due to the consumption of a controlled substance was extremely weak.

There is considerable evidence indicating that the cause of the vehicular collision and Manning's condition at the time of the collision was sleepiness and fatigue. One witness testified he observed Manning's truck run off the edge of the highway on one side. The officer who investigated the collision testified he noticed Manning's

eyes were bloodshot and Manning was standing there gazing down at the vehicle. The officer who took Manning to have his blood specimen taken testified Manning was walking slowly and appeared sleepy. He also testified Manning dozed off while sitting in the car on the way back from the hospital after the blood test. The chemistry supervisor at the Bellville General Hospital laboratory testified that Manning was dozing while she was labeling his blood and that she could hear him snoring.

■■■■ Although the State may have been scientifically correct in concluding that after the stimulation of the cocaine had worn off, Manning became fatigued, such consequences and effects of cocaine are not within the common knowledge of the jurors, and without expert testimony pointing out this connection, the jury was not in a position to determine such relevance.[1] If the State had offered expert evidence on the effects of prior use of cocaine to show that the previous consumption of the cocaine had brought about Manning's condition at the time of the collision, the evidence would have been compelling, but such evidence was not developed.

We next examine the unfair prejudicial effect of the evidence. There was a great potential for the evidence to impress the jury in an irrational and indelible way. The trial judge concluded in the record that he thought the testimony was undisputed that the experts said the cocaine metabolite would have had no effect on Manning's ability to drive. The trial judge also stated there was no evidence that linked the consumption of cocaine to increased drowsiness, and the trial court reacted to the evidence by making a state-ment indicating the prejudicial effect of such evidence when the judge made the following statement:

> This is a classic problem in that cocaine is in fact a flag for everybody.... I am sure the jury's attention was attracted to that. And certainly public policy is clear, that it dictates that people who operate vehicles should not be consuming alcohol or drugs. On the other hand, if whatever was in his system was not significant enough to have caused any problems in operating a vehicle, then we would be doing an injustice by allowing the jury to assume that, wouldn't we? ... I know gauging my own reaction when there was a suggestion that he had cocaine in his system, it made me upset. I am sure the jury felt the same way.

The statements by the trial court are not consistent with finding the probative value was not substantially outweighed by the potential for unfair prejudice.

Developing and contesting the evidence regarding the cocaine metabolite consumed a significant portion of the transcript and roughly one fifth of the evidence presented to the jury. The introduction of the evidence required the examination of at least three witnesses, in addition to various questions posed to the other six witnesses.

Finally, the evidence of the cocaine metabolite was related to a disputed issue, whether Manning's consumption of a controlled substance caused him to be reckless at the time of the accident, and the State had no other evidence to establish this fact of consequence. For example, no evidence was introduced of cocaine found in the truck, and there were no witnesses

---

1. When the "high" effect of the stimulation of cocaine wears off, the person goes through a stage referred to as a "crash." After the "high" effect of cocaine is diminished, the user is subject to fatigue, sleepiness, and lack of energy. *See* George W. Miller, Jr., M.D., *The Cocaine Habit*, 31(2) AM. FAM. PHYSICIAN 173, 173–176 (1985), LEXIS, Am. Fam. Physician.

to testify that Manning had cocaine before driving the truck. There was also no evidence regarding the effects of cocaine use that would have connected the State's other evidence, the bloodshot eyes, the swerving, the fatigue, and the failure to apply the brakes, to cocaine use or to the presence of the cocaine metabolite in Manning's blood sample. Therefore, the blood test result was not cumulative of other evidence the jury had heard.

The application of the factors to the evidence demonstrates that whatever probative value existed, it was significantly outweighed by the prejudicial effect the evidence might have.

■■■■■ Although denying admissibility under Rule 403 is discretionary, we find the trial court in this instance clearly abused that discretion. However, TEX. R.APP. P. 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." A criminal conviction will not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex.Crim.App.2001). This means the appellate court should consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence. *Id.* In addition, the appellate court may consider the trial court's instructions to the jury, the theories of the case the State and defendant have espoused, arguments to the jury, and relevant voir dire. *Id.* at 444–45.

■■■■ Because the cocaine metabolite evidence was the best evidence the State had to support the controlled substance allegation, the error would have significantly contributed to a verdict based on the consumption of a controlled substance. Because the trial court refused Manning's request to remove the controlled substance alternative from the means of recklessness submitted to the jury, it is impossible for us to determine on which alternative the verdict was based. While there was evidence to support a verdict based on the other means alleged for Manning's recklessness, there is no fair assurance the error did not influence the jury or influenced the jury only slightly. Manning's point of error is sustained.

In his third issue, Manning contends the trial court erred in overruling his request for a limiting instruction regarding the evidence disclosing the presence of a metabolite of cocaine in Manning's blood.

■■■ As mentioned above, because the State did include consumption of a controlled substance as one of the alternative means of Manning's recklessness and the court denied Manning's request to remove it from the jury charge, the question of consumption was a fact of consequence, and the evidence constituted same-transaction evidence. Because *Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim.App.1993), held that no limiting instruction was required for extraneous offenses that were same-transaction evidence of the charged offense, the court did not err in denying Manning's request for a limiting instruction. Manning's third point is overruled.

In his final point of error, Manning contends the court erred in allowing Lisa Schraeder, a community supervision officer, to testify as a reputation witness at the punishment phase on the grounds that she did not have substantial knowledge, that such knowledge was not obtained before the date of the offense, that her testimony was based solely on knowledge of specific acts, and because the fact that she

did not discuss his reputation with anyone made her incompetent to testify as a reputation witness.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2002) permits the state and the defendant to offer evidence as to any matter the trial court deems relevant to sentencing, including the defendant's general reputation, his character, and opinions regarding his character. The trial court's decision to admit or exclude evidence at the punishment phase is subject to review for an abuse of discretion. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App.1996).

The requirement that the witness be substantially familiar with the defendant's reputation was removed by amendment to TEX.R.CRIM. EVID. 405(a) in 1990 and was not revived in TEX.R. EVID. 405(a). Nor is it necessary that the witness know of the defendant's reputation before the date of the charged offense. TEX.R. EVID. 405(a) limits that requirement to reputation testimony at the guilt/innocence stage of a criminal trial. Even before the current Rule 405(a), courts had found that a reputation witness who had known of the defendant's reputation only since the charged offense and arrest could testify at the penalty stage of a criminal trial. *See Twine v. State*, 475 S.W.2d 774 (Tex.Crim. App.1972); *Chamberlain v. State*, 453 S.W.2d 490, 494 (Tex.Crim.App.1970).

Still, because the basis for the reputation hearsay exception is the reliability of the synthesis of observations of the day-to-day activities of the accused, *Wagner v. State*, 687 S.W.2d 303, 313 (Tex. Crim.App. [Panel Op.] 1985) (op. on reh'g), a reputation witness must be familiar with the defendant's reputation in some community. While it is not necessary to ask specifically about the defendant's "reputation," *Adanandus v. State*, 866 S.W.2d 210,

226 (Tex.Crim.App.1993), the witness's testimony must be based on discussions with others concerning the defendant, or on hearing others discuss the defendant's reputation, not just on personal knowledge. *Turner v. State*, 805 S.W.2d 423, 429 (Tex. Crim.App.1991).

It has been held that discussions with other police officers are sufficient to qualify a witness to testify regarding reputation. *See id.* at 423; *Martin v. State*, 449 S.W.2d 257, 260 (Tex.Crim.App.1970). However, the testimony may not be based solely on the charged offense, the defendant's "rap sheet," or knowledge of specific acts. *See Mitchell v. State*, 524 S.W.2d 510, 512 (Tex.Crim.App.1975); *Davis v. State*, 831 S.W.2d 839, 844 (Tex.App.-Dallas 1992, pet. ref'd); *see also Wagner*, 687 S.W.2d at 313–14 (error to allow reputation testimony based on allegation of one specific act); *Frison v. State*, 473 S.W.2d 479 (Tex.Crim.App.1971) (discussion of offense not improper as basis as long as based on other discussions as well).

Before the State began its case-in-chief in the penalty phase, defense counsel objected outside the presence of the jury to the State's intention to call Schraeder as a reputation witness. On voir dire, Schraeder testified she was familiar with Manning's reputation in the community. On cross-examination, responding to Manning's question requesting to know the basis of her reputation testimony, Schraeder testified only as to her personal knowledge that Manning had appeared in court for his conditional bond hearing smelling of alcohol and with a blood alcohol concentration of .07 and that she had received reports from supervising personnel that while he was on conditional bond, Manning tested positive twice for cocaine use. At the conclusion of questioning on voir dire, Manning objected to Schraeder as an opinion or reputation witness as there was

insufficient predicate laid. This objection was overruled. Schraeder testified Manning appeared at a bond hearing smelling of alcohol and, after the court overruled Manning's renewed objection to the testimony, that Manning's reputation for being peaceable and law-abiding was bad.

■ Manning argues the court abused its discretion in allowing Schraeder's reputation testimony because the State failed to establish a proper predicate. Although Schraeder testified she was familiar with Manning's poor reputation for being a peaceful and law-abiding citizen, the cross-examination by Manning revealed that this knowledge of reputation was based only on Schraeder's one personal observation and two reports of specific acts. Although the State argues Schraeder testified to discussions with the supervising personnel that faxed the test results, the record indicates only that she received faxes reporting the results of the urine analysis tests. The test results are evidence of specific acts, and while it is not error to consider specific acts in determining the reputation of the accused, alone they cannot combine with personal knowledge to establish Schraeder's competence to testify as to Manning's reputation. There is no evidence Schraeder discussed Manning with anyone, official or civilian, within any community. Such a foundation is insufficient to establish the proper predicate. Manning's question was broad enough that Schraeder should have provided all of the bases for her familiarity with Manning's reputation. The State failed to ask any questions on redirect examination that might have established the proper predicate if Schraeder had failed to provide a complete answer. Therefore, the court abused its discretion in allowing Schraeder to testify that Manning's reputation for being peaceable and law-abiding worked. Such error is subject to harm analysis. However, such analysis

in this case is unnecessary, as the initial point is dispositive of this case.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.