Affirmed and Opinion filed March 27, 2003
















Affirmed and Opinion filed March 27, 2003.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01182-CR

____________

 

LANCE COREY DELARUE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 881,751

 



 

O P I N I O N

After a jury trial, appellant was convicted of intoxication
manslaughter.  Tex. Pen. Code ' 49.08 (Vernon 1994). 
On appeal, appellant asserts five points of error.  We affirm.

FACTUAL AND PROCEDURAL HISTORY








In June 2000, Misty Purcell, complainant and decedent, and a
female friend, Lisa Murphy, met appellant, Lance DeLarue, and his roommate,
Nick LaRoche, for drinks at a sports bar. 
After an evening of drinking, the group decided to go to the apartment
shared by appellant and his roommate. 
Complainant=s friend drove the roommate; complainant and appellant rode
together in appellant=s van. 

On the way to appellant=s apartment, complainant and
appellant were involved in a traffic accident. 
The van was discovered upside down on the side of a dangerous curve in  the road.

Both appellant and complainant were ejected from the van
during the accident.  Complainant landed
approximately 40 feet from where the vehicle stopped; her injuries were
primarily on the right side of her body. 
Her arm, which was severed at the elbow, landed approximately twelve
feet from the vehicle on the opposite side as her body.  The hand of her severed arm clutched a
gold-colored barrette.  Complainant died
shortly after the accident; her death was caused by a fractured cervical
column, transected aorta, and loss of blood associated with the loss of her
right arm.

Appellant landed approximately 10B15 feet from the vehicle.  His injuries were primarily on the left side
of his body.  He has since recovered.

There is conflicting testimony as to who was driving the van
the night of the accident.  At the scene,
appellant told witnesses he was the driver; he said another vehicle
struck his van and forced him off the road. 
At trial, appellant claimed complainant was driving and that
appellant=s prior assertions were the result of
a mild traumatic brain injury and alcohol-induced amnesia.  

At the hospital, blood was drawn from the appellant, during which
time he again admitted he was the driver of the vehicle.  Also at the hospital, appellant verbalized
his fear that there was alcohol in his blood and he talked about getting a
lawyer.  He left the hospital through the
back halls wearing only his hospital robe. 
He was never discharged.








In the days immediately following the accident, appellant
continued to acknowledge he was the driver of the van.  He told complainant=s friend he remembered “running off
the road that night,” indicating to the friend that he was the vehicle=s driver; he expressed remorse at
causing the accident; and he told another of complainant=s friends that moments before the
accident complainant was laughing, playing with her hair, and talking about her
son=s birthday the next day.

There is no dispute that appellant was intoxicated the night
of the accident.  His blood alcohol level
was .262 and his urine tested positive for marijuana.  Additionally, evidence indicates he had a
strong odor of alcohol about him, his speech was slurred, and he stumbled and
spoke loudly as intoxicated people frequently do.  He admitted to drinking alcohol prior to
driving, and, when a deputy with the Harris County Sheriff=s Traffic Enforcement Division
performed a horizontal gaze nystagmus test on appellant at the accident site,
he was observed displaying all six indicators for intoxication.  There was no evidence of a head injury.

At trial, two expert witnesses testified as to how the
accident occurred.  The State=s witnessCDeputy David PearsonCtestified appellant=s van rolled first to its left side,
then at least one and one-half more times, with the vehicle being airborne
during part of the roll.  Based on
information gathered at the scene, Pearson determined the van was traveling
76.9 miles per hour when it left the road; there was no evidence another car
had struck the vehicle; and neither occupant wore a seatbelt.  He opined appellant was driving the vehicle
and complainant was ejected from the van first.

Testifying for the defense was Stephen Irwin, an accident reconstructionist. 
Irwin determined the vehicle left the road going 55 mph.  He agreed the van rolled on to the driver=s side first, but testified he
believed the vehicle did a “football” type roll for a total of only one and
one-half rolls. 
His testimony supported appellant=s theory that complainant was driving
at the time of the accident.

At trial, both sides presented testimony from a forensic
pathologist.  The State=s witness testified the type of
injury complainant sustained indicated she was sitting in the passenger seat at
the time of the accident; appellant=s witness testified complainant=s injuries were consistent with
complainant being the driver.  








After a jury trial, appellant was found guilty of the charge
of intoxication manslaughter.  In
addition, he was found guilty of using a deadly weaponCnamely, a motor vehicleCin commission of the offense.  Tex.
Crim. Proc. Code Ann. ' 42.12 (Sec. 3g) (a)(2) (Vernon
2003).  The trial court assessed
punishment at forty years= confinement in the Texas Department of Criminal Justice
Institutional Division.  Appellant filed
a timely notice of appeal.  

ISSUES ON APPEAL

Appellant asserts five points of error, arguing the trial
court improperly (1) found the State=s expert witness qualified to give
expert opinion as to rollover sequencing and events within the vehicle; (2)
denied appellant a meaningful Daubert-Kelly hearing[1]
to test the admissibility of certain evidence; (3) admitted evidence regarding
the presence of marijuana in appellant=s system; (4) allowed victim-impact
evidence during the guilt-innocence phase of the trial; and (5) overruled
defense counsel=s objection that the State=s argument during final summation
went outside the record.

EXPERT TESTIMONY

In his first and second points of error, appellant asserts
the trial court erred when it (1) found the State=s expert witness was qualified to
give expert opinion as to rollover sequencing and events occurring within the
vehicle at the time of the accident; and (2) denied appellant a “meaningful” Daubert-Kelly
hearing to test the admissibility of certain scientific evidence
.  We disagree.

1.         Standard of
Review








The decision as to whether an expert witness is qualified to
testify is a matter committed to the trial court=s discretion.  Thomas v. State, 915 S.W.2d 597, 600
(Tex. App.CHouston [14th Dist.] 1996, pet. ref=d); Harris County Hosp. Dist. v.
Estrada, 872 S.W.2d 759, 762 (Tex. App.CHouston [1st Dist.] 1993, writ
denied).  A trial court enjoys wide
latitude in determining whether expert testimony is admissible.  Hernandez v. State, 53 S.W.3d 742, 750
(Tex. App.CHouston [1st Dist.] 2001, no
pet.).  The trial court abuses its
discretion when its decision is so clearly wrong as to fall outside the zone of
reasonable disagreement and when the trial court acts so arbitrarily and
unreasonably, without reference to any guiding rules or principles.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim.
App. 1990).

A trial court=s decision to admit scientific testimony likewise should not
be overturned absent an abuse of discretion. 
Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000);  Morales v. State, 32
S.W.3d 862, 865 (Tex. Crim. App. 2000). 
In an application of law to fact question, the appellate courts should
view the evidence in the record in the light most favorable to the trial court=s ruling.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Any non-constitutional “error, defect, irregularity, or
variance that does not affect substantial rights must be disregarded.”  Tex. R. App. P. 44.2(b) (Vernon 2002).  A substantial right is affected when an error
has a substantial, injurious effect or influence in determining the jury=s verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). 
If, on the record as a whole, it appears that the error “did not
influence the jury, or had but a slight effect,” this Court must consider the
error harmless and allow the conviction to stand.  Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

2.         Discussion








If “scientific, technical, or other specialized knowledge
will assist the trier of fact to understand the evidence or to determine a fact
in issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education may testify thereto in the form of an opinion or
otherwise.”  Tex. R. Evid. 702; Daubert v. Merrill
Dow Pharmaceuticals, Inc., 509 U.S. 579, 590B9, 113 S. Ct. 2786, 2795 (1993);
Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001). 
A two-part test governs whether expert testimony is admissible: (1) the
expert must be qualified; and (2) the testimony must be relevant and be based
on a reliable foundation.  Id. at 499, citing E.I.
du Pont de Nemours v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995); Hartman
v. State, 946 S.W.2d 60, 62 (Tex. Crim. App. 1997). 
The trial court makes the initial determination about whether the expert
and the proffered testimony meet those requirements.  Robinson, 923 S.W.2d
at 556.

In deciding if an expert is qualified, trial courts “must
ensure that those who purport to be experts truly have expertise concerning the
actual subject about which they are offering an opinion.”  Helene Chem’l Co., 47 S.W.3d at 499, citing Gammill v. Jack
Williams Chevrolet, Inc., 972 S.W.2d 713, 719 (Tex. 1998).

A.        Qualifications

It is the responsibility of the party seeking qualification
of a witness as an expert to show the special knowledge of the specific matter
on which the expert is to testify.  Ventroy
v. State, 917 S.W.2d 419, 422 (Tex. App.CSan Antonio 1996, pet. ref=d). 
Special knowledge which qualifies a witness to give an expert opinion
may be derived from specialized education, practical experience, a study of
technical works, or a varying combination of these things.  Wyatt v. State, 23 S.W.3d 18, 27 (Tex.
Crim. App. 2000); Thomas v. State, 915 S.W.2d 597, 600 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d). 
Expert testimony cannot be based upon mere guess or speculation, but
must have proper factual basis; opinions which are purely speculative or
conjectural should be excluded.  Naegeli
Transp. v. Gulf Electroquip, Inc., 853 S.W.2d 737, 741(Tex. App.CHouston [14th Dist.] 1993, writ denied). 








Accident analysts and reconstruction experts may be qualified
to testify as to the cause of an accident if they are highly trained in the
science of which they testify.  Lopez
v. Southern Pac. Transp. Co., 847 S.W.2d 330, 334 (Tex. App.CEl Paso 1993, no writ); Trailways, Inc. v. Clark, 794
S.W.2d 479, 483 (Tex. App.CCorpus Christi 1990, writ denied).

As a general rule, police officers are not qualified to
render expert opinions regarding accidents based on their position as police
officers alone.  Lopez, 847 S.W.2d at 334. 
However, police officers are qualified to testify regarding accident
reconstruction if they are trained in the science about which they will testify
and possess the high degree of knowledge sufficient to qualify as an expert.  Chavers v. State, 991 S.W.2d 457, 460B61 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d); Trailways, Inc., 794
S.W.2d at 483; Gainsco County Mutual Insur. Co. v. Martinez, 27 S.W.3d 97, 105 (Tex. App.CSan Antonio 2000, pet. dism=d by agr.). 

In the instant case, appellant argues Pearson was unqualified
as an expert because he (1) had but six hours of formal training on rollovers;
(2) used a manual on accident reconstruction that had but one chapter out of
fifteen devoted to rollovers; (3) had never conducted independent studies or
published articles about rollovers, and (4) failed to quantify the number of
accidents he had investigated that involved rollovers.  See Fox. v. State, 2002 WL 122056
(Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (finding expert in sexual assault
case unqualified where she had not conducted studies or published articles on
sexually-abused children or the protocols for interviewing them).  We disagree.[2]








The central issue regarding Pearson=s qualifications is not whether
he is an expert in rollover sequencing, but rather whether he is qualified to
render an opinion regarding how appellant=s accident happened and who was
driving.  See Helena Chem’l Co., 18 S.W.3d at 753 (finding plant
scientist/agronomist qualified to render opinion as to plant=s susceptibility to charcoal rot
disease despite his not being a “plant pathologist”).

Here, the evidence shows Pearson performs accident
reconstruction on a daily basis.  He is a
deputy with the police department=s Traffic Enforcement Division; his
primary responsibility is investigating accidents; he has 20 years of
experience reconstructing accidents; and he has attended accident
reconstruction courses at Northwestern University=s Traffic Institute and locally.  Additionally, he has taken courses in
accident investigation, field sobriety testing, bicycle/pedestrian accident
reconstruction, field training, instructor development,  intoxication manslaughter, and vehicle
dynamics.  

Evidence shows Pearson visited the accident scene three
times.  He met with  people at the scene; he performed
tests on the appellant; he measured skid marks, yaw marks, and tire tracks; he
pulled a “drag sled” across the surface of the grass to determine a friction
coefficient; and he conducted an investigation that lasted three and one-half
months.

Because Pearson has “special knowledge” regarding accident
reconstruction that was derived from specialized education, practical
experience, and an on-site inspection of the accident scene, we conclude the
trial court did not act arbitrarily and unreasonablyCnamely, without reference to any
guiding rule or principleCin admitting the State=s expert witness=s testimony.  Thus, we find no abuse of discretion.  See Montgomery v. State, 810 S.W.2d 372,
380 (Tex. Crim. App. 1990).  

Accordingly, we overrule appellant=s first point of error.

B.        Reliability








In his second point of error, appellant asserts the trial
court improperly denied appellant a meaningful Daubert-Kelly hearing to
test the reliability of the State=s accident reconstruction
evidence.  We disagree.  Although appellant=s hearing was  untimely, we find it nevertheless made
sufficient inquiry into Pearson=s qualifications and methodology; thus, its lack of
timeliness caused no harm to appellant. 

The proponent of scientific evidence bears the burden of
demonstrating by clear and convincing evidence that the evidence is
reliable.  Jackson v. State, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). 
This is accomplished by showing: (1) the validity of the underlying
scientific theory; (2) the validity of the technique applying the theory; and
(3) proper application of the technique on the occasion in question.  Id.; Kelly v. State,
824 S.W.2d 568, 573 (Tex. 1992).

The Court of Criminal Appeals has held that the trial court
must conduct a hearing outside the presence of the jury to determine whether
the proponent has established all three criteria.  Id.; Massey v. State, 933 S.W.2d
141, 152 (Tex. Crim. App. 1996).  This determination is
required whether the science at issue is novel or well established.  Hartman v. State,
946 S.W.2d 60, 63 (Tex. Crim. App. 1997); Jackson, 17 S.W.3d at 670. 


Factors that affect a proper determination of these three
criteria include, but are not limited to the following: (1) the extent to which
the underlying scientific theory and technique are accepted as valid by the
relevant scientific community; (2) the qualifications of the experts testifying;
(3) the existence of literature supporting or rejecting the underlying
scientific theory and technique; (4) the potential rate of error of the
technique; (5) the availability of other experts to test and evaluate the
technique; (6) the clarity with which the underlying scientific theory and
technique can be explained to the court; and (7) the experience and skill of
the person(s) who applied the technique on the occasion in question.  Kelly, 824 S.W.2d at 573.  In reviewing reliability, a trial court does
not decide whether the expert=s conclusions are correct; rather, it determines whether the
analysis used to reach those conclusions is reliable.  Exxon Pipeline Co. v. Zwahr, No.
01-0168,. 2002 WL 1027003, at  *5 (Tex. June 27, 2002).








Accident reconstruction is scientific evidence subject to a Daubert-type
hearing.  See Waring v. Wommack,
945 S.W.2d 889, 892 (Tex. App.CAustin 1997, no writ).  However, the process trial courts follow in
conducting such hearings has not been clearly articulated by our higher
courts.  

Indeed, the Texas Court of Criminal Appeals has offered no
guidance regarding how 
a trial court should hold a Daubert-Kelly hearing, while
the Texas Supreme Court has only vaguely” referred to a “pretrial ‘Daubert/Robinson-type
hearing.’”  Maritime Overseas Corp.,
971 S.W.2d at 422B23 (Hecht, J., and Phillips, J., dissenting) (pointing out
that the Texas Supreme Court has not explained “what kind of hearing this is,
how it is invoked, [or]  when it is to be
conducted relative to the commencement of trial”).  See also Daubert, 509 U.S. at 594, 113
S. Ct at 2797 (holding only that “[t]he inquiry envisioned . . . is a flexible
one.”); Kelly, 824 S.W.2d at 573 (holding only that the proponent of the
evidence “must prove by clear and convincing evidence . . . outside the
presence of the jury” that proffered evidence is relevant and reliable).  

In the instant case, the State presented the accident
reconstruction testimony of 
Deputy Pearson during its case-in-chief.  After Pearson recounted his training, his
on-the-job experience, and the evidence he found at the scene, he began to
opine about how the accident occurred. 
At this point, defense counsel objected and approached the bench to
request a Daubert hearing.  

At the bench,
trial counsel explained that Pearson=s
testimony:

. . . relates to the actual
rollover reconstruction . . . I do want to at this point have [a] Daubert hearing
. . . as to what happens when the vehicle leaves the ground and begins its
roll. . . . .  [I]n order to accurately
re-create a rollover sequence, it requires a whole bunch more than just being
able to look at skid marks and that kind of stuff.  And before he begins offering an opinion as
to how this vehicle rolled . . . I would like to make sure that he is
sufficiently qualified to do that because it is a whole different ballgame than
taking skid marks out there.

After the trial court overruled appellant=s request for a hearing, appellant
was allowed to have a running objection to testimony regarding the rollover
sequence.  Pearson then proceeded to
provide his theory as to how the van rolled, the order in which the occupants
were ejected, and whether complainant was the driver or passenger at the time
of the accident.

During Pearson=s testimony, the trial court took a
recess.  It was during this recess that
the State took Pearson on voir dire to establish that Pearson had
training in rollover sequencing, that he had investigated rollover accidents on
many occasions, and that his methodology was based on techniques detailed in
the Traffic Accident Reconstruction Manual used by his police
force.  During cross-examination, defense
counsel attempted to question Pearson about the rate of roll deceleration, the
rate of energy lost during a roll, center of gravity studies, and occupant
kinematics; however, the trial court sustained objections to those questions on
the basis they were “outside the scope of this hearing.” 

The trial court found the witness qualified as an expert
under Rule 702 and allowed him to offer his expert opinion as to accident
reconstruction.  See Tex. R. Evid. 702.  Pearson then resumed his testimony before the
jury about the details of his investigation, the evidence he found at the
scene, the results of appellant=s on-site intoxication test, and Pearson=s opinion about who was driving that
night.

According to Kelly, a proponent of scientific evidence
must prove the three necessary criteria of reliability to the trial court
“outside the presence of the jury, before the evidence may be
admitted.”  Kelly, 824 S.W.2d at
573 (emphasis added).  Because the State=s voir dire examination of
Pearson was held after a portion of Pearson=s evidence was admitted, it was
untimely.  Indeed, had the trial court
determined in the State=s voir dire examination that Pearson was not qualified
as an expertCand that his scientific evidence was not
reliableCthe jury would have heard
inadmissible evidence.  








Thus, we find the trial court abused its discretion in
denying appellant a Daubert-Kelly hearing prior to admission of Pearson=s accident-reconstruction
testimony.  

HoweverCdespite the hearing=s untimelinessCthe State nevertheless produced
evidence addressing the proper Kelly criteria during the voir dire examination.
 First, it produced evidence about
Pearson=s education in accident
reconstruction; second, it produced evidence about how Pearson determines the
direction an unrestrained driver and passenger travel inside a vehicle; third,
it produced evidence about how Pearson determines the speed of a vehicle at the
time it leaves the road and how this methodology is “commonly accepted,”
“taught at accident reconstruction schools throughout the country,” and based
on published techniques; and finally, it produced evidence detailing the
methodology Pearson uses to analyze vehicle paths and the order in which
passengers are ejected during an accident.

Because the evidence attests to (1) the validity of the
theory underlying Pearson=s accident reconstruction methodology; (2) the validity of
the techniques Pearson uses to apply that theory, and (3) how specifically
Pearson applied the techniques on the occasion in question, we conclude it was
within the trial court=s discretion to find Pearson qualified to testify regarding
appellant=s accident.  Moreover, because Pearson=s answers to appellant=s questions regarding rate of roll
deceleration, rate of energy lost, center of gravity issues, and occupant
kinematics are not relevant to how Pearson reconstructs an accident, we
find the trial court properly sustained the State=s objections to appellant=s questions on these subjects.[3]









Thus, we conclude appellant was given a meaningful Daubert-Kelly
hearing, albeit a belated one.  Because
the voir dire examination was properly conductedCand because the trial court properly
found Pearson=s evidence to be reliableCany error resulting from the timing
of appellant=s hearing was rendered harmless.[4]  See Jackson v. State, 17 S.W.3d 664,
672 (Tex. Crim. App. 2000) (finding trial court=s failure to hold hearing outside
jury=s presence did not result in
admission of unreliable evidence and so did not have “a substantial and
injurious effect or influence in determining the jury=s verdict.”).

Accordingly, we overrule appellant=s first and second points of error.

MARIJUANA EVIDENCE

In his third point of error, appellant asserts the trial
court erred when it permitted evidence showing the existence of marijuana in
appellant=s system without requiring the State
to showCby reliable and competent scientific
evidenceCthat appellant was under the
influence of marijuana at the time of the accident.  We agree; however, we conclude the error was
harmless.

1.         Standard of
Review

The standard of review for evidentiary decisions made by the
trial judge is the abuse of discretion standard.  Prystash v. State, 3
S.W.3d 522, 527 (Tex. Crim. App. 1999). 
An abuse of discretion occurs when the trial court acts without
reference to any guiding principle or rule. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim.
App. 1991).  Under this standard, a trial court=s decision to admit certain
scientific evidence must be within the zone of reasonable disagreement in light
of evidence offered at a Daubert hearing and the requirements of the Texas
Rules of Evidence.  See Tex. R. Evid. 702;  Hernandez v. State, 55
S.W.3d 701, 704 (Tex. App.CCorpus Christi 2001, pet granted).








2.         Discussion

Appellant claims he was entitled to a Daubert-Kelly
hearing on the reliability of the State=s evidence pertaining to the presence
of marijuana in his system.  Because
tests that discern evidence of marijuana in appellant=s system are unreliable, he argues,
admission of such evidenceCwithout proof of reliability through a Daubert-Kelly
hearingCviolates Texas Rule of Evidence 403
because the evidence is more prejudicial than probative.[5]  We agree. 








The Texas legislature has determined evidence of the presence
of a controlled substanceCas shown by analysis of a specimen of the person=s blood, breath, or urine taken at
the request or order of a peace officerCis admissible in a criminal trial
arising out of a Chapter 49 offense involving operation of a motor vehicle.[6]  Tex. Transp. Code Ann. ' 724.064 (Vernon 1999). 
See also Emerson v. State, 880 S.W.2d 759, 764 (Tex. Crim. App.
1994); Scherl v. State, 7 S.W.3d 650, 652 (Tex. App.CTexarkana 1999, pet. ref=d).       Failure
to hold a “gatekeeper” hearing under Rule 702 to determine if the evidence has
been properly obtained and is reliable, however, can render such evidence
inadmissible.  Beard
v. State, No. 0282-00, CS.W.3d.C, 2002 WL 31116936, at *6 (Tex. Crim. App. 2002). 
So, too, can failure to extrapolate the presence of a controlled
substance back to the time of an accidentCbecause such failure can render the
evidence insufficient under a Rule 403 analysis.  Manning v. State, 84 S.W.3d 15, 22
(Tex. App.CTexarkana 2002, pet. granted).  Because the “consequences and effects” of
such evidence are “not within the common knowledge of jurors,” expert testimony
pointing out the connection between the presence of a controlled substance in
an appellant=s bloodstream and appellant=s behavior is essential to a
determination of relevance.  Id.

Here, the State elicited testimony showing the presence of
marijuana in appellant=s bloodstream. 
However, no attempt was made to quantify the presence; no attempt
was made to show when the marijuana was introduced into his system; no
attempt was made to show appellant was “under the influence” of the marijuana
at the time of the accident; and no attempt was made to show causation between
appellant=s behavior and the presence of
marijuana in his system.

 Because there was no Daubert-Kelly
hearing held to determine the reliability of the State=s marijuana evidence as it related to
appellant=s intoxication and resultant
behavior, we find the trial court erred in admitting this evidence.  See Beard, 2002 WL 31116939, at *6
(holding intoxilyzer results are subject to “gatekeeper” hearings under Rule
702 as held in Kelly).  See
also Reed v. State, 59 S.W.3d 278, 282 (Tex. App.CFort Worth 2001, pet ref’d) (evidence
defendant used antidepressant medication and was treated for anxiety and
hallucinations was unreliableCand therefore inadmissibleCwhere no expert witness testified to
assist the jury in understanding the evidence); Hernandez v. State, 55
S.W.3d 701,705 (Tex. App.CCorpus Christi 2001, pet. granted) (testimony regarding
urinalysis results was unreliable where State failed to show extent to which
theory and technique satisfied the Kelly factors).  The error, however, was harmless.

A nonconstitutional error that does not affect the
substantial rights of an accused must be disregarded.  Tex. R. App. P. 44.2(b).  Manning, 84 S.W.3d
at 24.  A substantial right is
affected when an error has a substantial, injurious effect or influence in
determining the jury=s verdict.  King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Therefore, a criminal conviction will not be
overturned for nonconstitutional error if the appellate court, after examining
the record as a whole, has fair assurance that the error did not influence the
jury or influenced the jury only slightly. 
Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).








In the instant case, appellant was convicted of intoxication
manslaughter.  See Tex. Pen. Code Ann. ' 49.08 (Vernon 1994). 
Jurors were given three alternative theories under which they could find
appellant was intoxicated: they could find appellant was intoxicated due to
alcohol;  they
could find appellant was intoxicated due to marijuana; or they could find
appellant was intoxicated due to alcohol and marijuana.  

Uncontroverted testimony at trial indicates appellant was
highly intoxicated at the time of the accident, albeit from alcohol.  Appellant had several drinks prior to the
accident;  appellant was asked to leave
the first sports bar for being loud and obnoxious; three bystanders at the
accident scene, three police officers, and a nurse all testified appellant had
an odor of alcohol about him, slurred speech, and stumbled as if intoxicated;
appellant exhibited all six signs of intoxication upon administration of a
horizontal gaze nystagmus test; appellant’s blood alcohol level was well above
the legal limit; and appellant=s friend LaRoche testified appellant was concerned about his
blood alcohol concentration at the hospital. 
In addition, appellant=s own expert testified appellant was intoxicated during the
accident and defense counsel conceded as much during final argument when he
stated  “we all know how intoxicated
[appellant] was . . . we have never once tried to suggest . . . anything
differently.”

After examining the record as a whole, we find the evidence
above strongly supports a finding of intoxicationCwith or without the marijuana
evidence.[7]  Indeed, we are assured that if admission of
the State=s marijuana evidence influenced the
jury at all, it did so only slightly. 
Thus, we find the trial court=s error in admitting the evidence to
be harmless.  

Accordingly, we overrule appellant=s third point of error.








VICTIM IMPACT EVIDENCE

In his fourth point of error, appellant asserts the trial
court abused its discretion in admitting evidence concerning the personal life
of complainant during the guilt-innocence stage of the trial.  We disagree.

1.         Standard of
Review

The admission of victim impact evidence is a matter of
discretion of the trial court.  See
Contreras v. State, 59 S.W.3d 362, 364 (Tex. App.CHouston [1st Dist.] 2001, no pet.).
A trial court=s admission of such evidence is reviewed under an abuse of
discretion standard.  Id.; Mosley v.
State, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998). 
As long as the trial court=s ruling is within the “zone of
reasonable disagreement,” there is no abuse of discretion and the trial court=s ruling will be upheld.  See Rachal v. State, 917 S.W.2d 799,
807 (Tex. Crim. App. 1996); Montgomery, 810 S.W.2d at 391.

2.         Discussion

The Texas Court of Criminal Appeals has defined “victim
impact” evidence as evidence that is “generally recognized as evidence
concerning the effect that the victim=s death will have on others,
particularly the victim=s family members.”  Mathis v. State, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002). 
See also Mosley, 983 S.W.3d at 261.  This includes evidence regarding the
physical, psychological, or economic effect of a crime on the victims
themselves or their families.  Lane v. State, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991).  See also Matchett v.
State,   941 S.W.2d 922, 931 (Tex.
Crim. App. 1996).

In the instant case, appellant asserts the State improperly
examined complainant=s mother during the guilt-innocence stage of trial:

State:              And your one grandchild, that=s Misty=s child?

Witness:         Correct.

State:              Was Misty close with her family?

Witness:         Misty was very close with her family.








State:              What kind of things did Misty like to do?

Defense:         Your Honor, may we approach the bench,
please?

Court: Sure.

(AT BENCH)

Defense:         Your Honor, my objection is that this
is victim impact testimony, and it is relevant to punishment, or I believe it
exceeds the scope of what is permissible. 
I object to C

Court: What=s the purpose of this?

State:              I=m asking basic fact background questions so the jury
knows who we are talking about.  I have
no intention of asking how it has affected [the victim=s mother] or anybody else in the family.

Court:             Don=t get too far afield.

State:              I=m almost done.

Defense:         Judge, what kind of person she is, is
victim impact testimony.  All those
things are calculated to prejudice or to inflame a jury, and I object to it,
Your Honor.

Court: Your objection is sustained. 
Go somewhere else. 

(JURY PRESENT)

State:              . . . How did you find out
about her death?

Witness:         I received a call from my mother. 

State:              The day she died, did the family have special plans for
that day?

Witness:         Yes.

Defense:         Your Honor,
excuse me.  Your
Honor, I know where this is going.  This
is going to B may we approach the bench again?

Court: Sure

(AT THE BENCH)

Defense:         Judge, she is going to elicit evidence
that it was Misty=s son=s birthday the next day.  That is clearly victim impact testimony,
Judge.

State:              I just want to know if the date was the same date as
the kid=s birthday.

Court: You get there some other way. 
Let=s go.  Sustained.

(JURY PRESENT)

State:              Was the date June 16th significant for some reason?

Witness:         It was her son=s second birthday.








Defense:         Objection, Your Honor.

Court: Overruled.

State:              I=m sorry, what was your answer?

Answer:          It was
her son=s second birthday.

Following this testimony, the State showed two photographs of
complainant to her mother for identification: 
one was taken at the autopsy, the other included complainant=s son.  When the State moved to publish the
photographs to the jury and the trial court asked for objections, defense
counsel responded, “Only what has been previously noted in the record.” The
trial court stated that the objection was overruled; the photographs were then
admitted and published.[8]  








Appellant asserts the State=s questions elicited “victim impact”
evidence and so were improper.  Contrary
to appellant=s position, however, we do not view the
recitation of basic facts surrounding how complainant=s mother learned of her daughter=s death and photographs of the victim
to be “victim impact” evidence.  Indeed,
the evidence does not concern the physical, psychological or economic effect of
the crime on complainant or her family; rather, it shows the witness properly
fixed the date of the event in her mind and provides background information
regarding the complainant.  See
Matchett, 941 S.W.2d at 931 (holding no victim-impact testimony where widow
identified her husband through a photograph of him with friends and testified
she was married to victim 25 years, had five children by him, and that victim
was alone the night of his murder); Lane, 822 S.W.2d at 41 (holding no
victim impact testimony where no evidence was given regarding the physical,
psychological, or economic effect of the crime on victims or their
families).  Although the testimony may
have had an emotional impact, we cannot conclude the trial court abused its
discretion in admitting it.  See Davis
v. State, 68 S.W.3d 273 (Tex. App.CDallas 2002, pet. ref=d).

Because the State=s evidence does not constitute
victim-impact evidence and because the trial court did not abuse its discretion
in admitting it over appellant=s objection, we overrule appellant=s fourth point of error.[9]

STATE’S CLOSING ARGUMENT

Appellant asserts in his fifth point of error that the trial
court abused its discretion in overruling his objection to the State’s closing
argument during the guilt-innocence stage of trial that appellant had
purposefully changed his story as to who was driving his vehicle at the time of
the accident.  We disagree.

1.         Standard of
Review

When reviewing alleged error in a jury argument, the
appellate court must analyze the statement in light of the entire argument and
not on isolated instances.  Drew v.
State, 743 S.W.2d 207, 220 (Tex. Crim. App. 1987).  In order to constitute reversible error, the
argument must be extreme or manifestly improper, violative of a mandatory
statute, or inject new facts harmful to the accused into the trial
proceedings.  McKay
v. State, 707 S.W.2d 23, 38 (Tex. Crim. App. 1985). 








Any error in jury argument must be disregarded unless it
“affects substantial rights.”  Tex. R. App. P. 44.2(b) (Vernon 2002); see
also Martinez v. State, 17 S.W. 3d 677, 692 (Tex. Crim. App.
1998).  A substantial right is affected
when the error had a “substantial and injurious effect or influence in
determining the jury=s verdict.”  King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1971).  In determining whether improper prosecutorial
jury argument is harmless, we must calculate as much as possible the probable
impact of the error on the jury in light of the existence of other evidence.  Orona v. State, 791
S.W.2d 125, 130 (Tex. Crim. App. 1990). 


In conducting this harm analysis, we consider the nature and
source of the error, the degree the prosecutor emphasized the erroneous jury
argument, probable collateral implications, how much weight a juror placed on
the erroneous jury argument, and whether holding the improper jury argument
harmless would encourage the State to repeat it.  Id.; Harris v.
State, 790 S.W.2d
568, 587 (Tex. Crim. App. 1987).  

2.         Discussion

Proper jury argument includes four areas: (1) summation of
the evidence presented at trial; (2) reasonable deductions drawn from that
evidence; (3) responses to opposing counsel=s argument; and (4) pleas for law
enforcement.  Coble v. State, 871
S.W.2d 192, 204 (Tex. Crim. App. 1993); Sanders v. State, 25 S.W.3d 854,
858 (Tex. App.CHouston [14th Dist.] 2000, pet. dism=d). 
Counsel is allowed wide latitude without limitation in drawing
inferences from the evidence so long as the inferences drawn are reasonable,
fair, legitimate, and offered in good faith. 
Gaddis v. State, 753
S.W.2d 396, 398 (Tex. Crim. App. 1988).  Indeed, prosecutors are entitled to come up
with alternative theories to defendants= explanations of events so long as
they can be fairly inferred from the evidence. 
See Gaddis, 753 S.W.2d at 399 (finding State=s argument that defendant refused to
give breath sample for fear that “the game would be over” was proper because
there was evidence in the record 
appellant was intoxicated). 

Here, the following exchange took place during the State=s closing argument:








State:              The defendant said he was the driver and now he wants
to take it back.  And he began that
defense way back then . . . saying “I was run off the roadCI was driving but I was run off the road?” Blame it on
the other guy.

As time goes by, his attorney gets a hold of him.  They realize that=s not going to work because they can=t get an expert to say the vehicle was struck.  So, they can=t stick
with all the liesC

Defense:         Judge, I=m going
to object to the rather speculative nature of what is being argued at this
point.  At this point,
it=s outside the scope of the record.

Court: Objection is overruled.

State:              The defendant can=t change
what everybody heard come out of his mouth. 
He can=t change
his blood alcohol was a 0.21.  So, what=s left?  Well,
nobody saw him driving, so blame it on the dead girl.  That=s what
he does.  It=s as
simple as that.  

 

The State then goes on to urge the jurors to use their common sense in
evaluating the evidence. 

Appellant asserts the argument above was improper and the
trial court abused its discretion in overruling his objection to it.  We disagree.

First, the State’s argument was a reasonable deduction from
the evidence and an answer to the appellant=s closing argument; thus, it falls
within permissible areas of jury argument. 
Second, the argument injects no new factsCindeed, it refers only to facts
already in evidence, namely (1) that appellant initially stated he was run off
the road by another vehicle and was the driver of the van; (2) that appellant=s expert witness found no proof the
van was struck by another vehicle; and (3) that appellantCin his closing argumentCoffered an explanation as to why he
previously made different statements about being the vehicle=s driver. 

Because the State=s argument was a summation of
evidence presented at trial and offered a reasonable deduction drawn from the
evidence, we find the trial court did not abuse its discretion in overruling
appellant=s objection.  

Accordingly, we overrule appellant=s fifth point of error. 








CONCLUSION

Having
overruled all five of appellant=s points of error, we affirm the trial court=s judgment.  

 

/s/        Joe L. Draughn

Justice

 

 

Judgment rendered
and Opinion filed March 27, 2003.

Panel consists of
Justices Yates, Frost, and Senior Justice Draughn.[10]

Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  See Daubert
v. Merrill Dow Pharm., Inc., 509 U.S. 579, 113 S Ct. 2786 (1993); Kelly v. State, 824 S.W.2d 568
(Tex. Crim. App. 1992).





[2]  Appellant’s
reliance on Fox is misplaced.  In Fox,
this court found that appellant’s expert was unqualified to offer an
opinion as to (1) the proper protocols for interviewing an abused child; (2)
the developmental stages of a child; and (3) the behavioral patterns of an
abused child.  Fox, 2002
WL 122056, at *12.  The reason she
was unqualified, said this court, was because she had “so little experience in
dealing specifically with abused children”Cindeed,
she had only worked 35B55 child abuse cases in twelve years and conducted no
independent studies.  Id.

Here, the State=s witness reconstructs accidents on a daily
basis.  He has done so for twenty years.
Additionally, he was not called upon to testify about proper protocol for
conducting an investigation; rather, he was called upon to offer his opinion as
to causation.  Because Pearson has
practical experience, it is not necessary that he be “published” for his
opinion to be reliable.  See Merrell
Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 727 (Tex. 1997) (noting publication is not a “prerequisite for
scientific reliability”).





[3]  The record does not contain a bill of exception or
offer of proof to show the facts appellant would have elicited had the trial
court not sustained the State’s objections to appellant=s questions. 
Thus, appellant has not preserved Pearson=s
answers for appellate review.  See Tex. R. App. P. 33.2; Jenkins v.
State, 948 S.W.2d 769, 775 (Tex. App.CSan Antonio 1997, pet. ref=d).  





[4]  In addition to
Pearson’s expert testimony, the following evidence also suggests appellant was
the van’s driver that night: appellant’s statements after the accident;
complainant=s lack of a driver=s
license; complainant=s severed arm, with the hand still clutching a
barrette; statements made by appellant’s friends and acquaintances; statements
made by persons who spoke with appellant in the days following his accident;
and testimony from the State’s forensic pathologist.  Thus, even if Pearson’s testimony had been
inadmissible, a jury still could reasonably have found appellant was the driver
at the time of appellant’s accident.

 





[5]  The State
argues appellant failed to preserve his complaint for appellate review because
appellant’s objection on appeal does not comport with defense counsel’s objection
at trial.  See Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  The State asserts that, at trial, appellant
objected to the State’s marijuana evidence based on Rule 403 of the Texas Rules
of Evidence, but that on appeal, appellant objects based on the State=s lack of a scientific expert who can testify as to
the validity of marijuana tests and results. 
We disagree.

Appellant filed a motion in limine, made
three objections at trial, and repeated his objection on appeal thatCwithout a showing that there is scientific reliability
of marijuana testingCadmission of such evidence is more prejudicial than
probative.  We conclude this properly
preserved error for review. 





[6]  Appellant was
convicted of intoxication manslaughter under ' 49.08
of the Texas Penal Code.





[7]  Additionally,
the issue of  whether appellant had
marijuana in his system has nothing to do with the primary contested issue at
trialCnamely, who was driving appellant’s van at the time of
the accident. 





[8]  The State
points out that while appellant objected to the State=s photographs based on an objection “previously noted
on the record,” there was in fact nothing in the record where appellant had
objected to the photographs.  Therefore,
says the State, appellant’s reference to a “previously noted” objection was in
fact no objection and preserved nothing for review. 

We are unpersuaded. Defense counsel
objected three times to admission of the mother’s testimony on the basis of its
being “victim-impact” evidence.  Because
the photographs were admitted during the mother’s direct examination, this
court will interpret appellant=s objections broadly to include the photographs.





[9]  Even if the
evidence cited by appellant could be characterized as “victim impact” evidence,
its admission was harmless because there was other testimonyCtestimony not challenged by appellantCthat produced the same information.  See Ford v. State, 919
S.W.2d 107, 117 (Tex. Crim. App. 1996). 
Indeed, one of complainant=s
friends testified she spoke with appellant after the accident and he informed
her complainant was “very happy” at the time of her deathC“talking about her son=s
birthday party which was happening the next day.”  Because defense counsel did not object to
this testimony, he waived his right to complain of similar testimony elsewhere.





[10]  Senior Justice Joe L. Draughn sitting by assignment.