**Andres LOPEZ and Rosa Lopez, Individually and as Father and Mother and for the Estate of Rodolfo Lopez, Deceased, and Gloria Marin, Individually and Mother and Next Friend of Angel Rodolfo Lopez, a minor, Appellants,**

v.

**The SOUTHERN PACIFIC TRANSPORTATION COMPANY, Appellee.**

No. 08–92–00050–CV.

Court of Appeals of Texas, El Paso.

Jan. 13, 1993.

**332**

Lark H. Fogel, Law Offices of James F. Scherr, Sam J. Legate, Law Offices of James F. Scherr, L.L.P., El Paso, for appellants.

David S. Jeans, Kemp, Smith, Duncan & Hammond, El Paso, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a wrongful death case. The jury rendered a verdict in favor of Southern Pacific Transportation Company, Appellee, finding Rodolfo Lopez, in whose behalf the suit was brought, to have been ninety percent negligent.

In five points of error, Appellants challenge the judgment of the trial court. In points of error one through four, Appellants contend the trial court erred: (1) by failing to strike two jurors for cause; (2) by failing to instruct as to an evidentiary presumption; (3) by qualifying Gilbert Mier as an expert; and (4) by disallowing certain testimony by expert witness Sam Kramer. In their final point, Appellants urge that the jury's finding in favor of Southern Pa-cific as to negligence is against the great weight and preponderance of the evidence. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

On November 25, 1987, at approximately 5 p.m., Rodolfo Lopez was killed when he was struck, run over and decapitated by a train owned by Southern Pacific Transportation Company. There were no eyewit-nesses to the accident. The body of Rodol-fo Lopez was discovered lying in the middle of two sets of "mainline" railroad tracks east of the Estrella Street crossing in El Paso, Texas. Although the deceased had been decapitated, the rest of his body was unscathed and otherwise appeared not to have been struck by the train. While a closer examination revealed the deceased's clothing appeared clean, his right tennis shoe was off his foot, and the sole of the shoe, nearly torn away from the rest of the shoe, had been ripped lengthwise and was "flipped over". The only other physical evidence gathered at the scene of the acci-dent was a piece of steel banding, allegedly found near the body of the deceased.

The Appellants introduced evidence at-tempting to show that the deceased tripped over the steel banding, struck his head (presumably rendering him unconscious), only to be later run over by the train and killed. On the other hand, Appellee at-tempted to establish that the deceased was intoxicated at the time of his accident and fell on his own or tripped over a spike, rail or railroad tie while he was crossing near or attempting to board the train.

## II. DISCUSSION

■ In Point of Error No. One, Appel-lants assert the trial court erred in overrul-ing their motions to strike two jurors for cause.

To preserve error regarding a trial court's failure to strike jurors for cause, a complaining party, prior to the exercise of their peremptory challenges, must inform the trial court of the following: "(1) that she would exhaust her peremptory chal-lenges; and, (2) that after exercising her

peremptory challenges, specific objectionable jurors would remain on the jury list." *Hallett v. Houston Northwest Medical Center,* 689 S.W.2d 888, 890 (Tex.1985). Absent the above notice to the trial court, the complaining party waives any error. *Id.*

In the instant case, Appellants timely moved to strike the two objectionable jurors for cause, which was denied by the trial court. However, the record is wholly devoid of any notice by Appellants to the trial court informing the court prior to exercising their peremptory challenges, that they would exhaust their challenges and be forced to seat two objectionable jurors. The record further shows that after both sides utilized their peremptory challenges and the clerk read the names of the jurors to be seated, the following discussion between the court and Appellants' counsel took place:

> THE COURT: Does anyone have any objections to the jury as it has been called?
>
> [COUNSEL FOR APPELLANTS]: Your Honor, we would like to make a record that we were forced to utilize two of our peremptory challenges to excuse juror number 11, Mr. Hemphill, and juror number 31, Mr. Torres, who we felt that the Court should have struck for cause as requested. No changes in the jury, as empaneled, were made by the trial court.

■ A party exercises its peremptory challenges by delivering its list of peremptory challenges to the court. *Beavers v. Northrop Worldwide Aircraft Services,* 821 S.W.2d 669, 681 (Tex.App.—Amarillo 1991, on rehearing 1992, writ denied). In *Beavers,* as in the instant case, counsel attempted to preserve error only after delivering the list to the court and exercising the peremptory strikes, only to find that error had not been properly preserved. *Id.* Consequently, we find that Appellants have waived any error, and Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellants assign error to the trial court's refusal to include an instruction on an evidentiary presumption. Appellants assert Southern Pacific neglected to make a proper investigation of the accident as well as the cause of death of Rodolfo Lopez. Appellants further contend this inadequate investigation amounted to concealment or destruction of evidence thus entitling Appellant to a jury instruction that had the evidence been produced, it would have been unfavorable to Southern Pacific. Appellants raised these contentions prior to trial in response to Appellee's motion in limine seeking to exclude any evidence on or statements mentioning the investigation or presumption. The trial court allowed evidence regarding the nature of the investigation, but disallowed evidence as to the charge giving rise to the presumption. After the parties had closed, prior to the charge being submitted to the jury, Appellants objected to the failure of the charge to contain an instruction on the presumption. However, the record does not reflect that such instruction was requested, tendered to or ruled upon by the trial court. Thus, the issue central to disposition of Point of Error No. Two is whether Appellants' mere objection alone was sufficient to preserve error.

■ Rule 278 of the Texas Rules of Civil Procedure and interpretive case law provide that purported error regarding an omitted jury instruction is deemed waived absent the request and tender, in writing, of an instruction in substantially correct form. Tex.R.Civ.P. 278; *Goswami v. Thetford,* 829 S.W.2d 317, 320 (Tex.App.—El Paso 1992, writ denied). Moreover, a request for a jury instruction must be made separate and apart from objections to the charge. Tex.R.Civ.P. 273; *Woods v. Crane Carrier Co., Inc.,* 693 S.W.2d 377, 379 (Tex.1985). In that regard, a mere objection to the charge, standing alone, will preserve error as to a defective instruction but will not preserve error as to an omitted instruction. We have carefully reviewed the record and find that Appellants failed to request or tender a proposed instruction as to the evidentiary presumption and, thus, have waived any error. Point of Error No. Two is overruled.

In Point of Error No. Three, Appellants contend the trial court erred in allowing Gilbert Mier, a lieutenant with the Southern Pacific Police Department, to testify as an expert witness. The trial court permitted Mier to testify in opinion form regarding how the body came to rest in the position it did prior to its discovery on the date of the fatal accident. In substance, Mier was permitted to testify as to the cause of the accident and as an accident reconstruction expert.

As a general rule, a trial court is vested with wide latitude in its determination of whether a particular witness possesses the requisite knowledge, skill or expertise to testify as an expert. Thus, the determination by the trial court will not be disturbed absent a clear abuse of discretion. Tex. R.Civ.Evid. 702. *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 483 (Tex.App.—Corpus Christi 1990, writ denied).

As a general rule, a police officer is not qualified to render an expert opinion regarding an accident based upon his position alone. *Pyle v. Southern Pac. Transp. Co.*, 774 S.W.2d 693, 695 (Tex.App.—Houston [1st Dist.] 1989, writ denied). In our jurisdiction, accident analysts and reconstruction experts may be qualified to testify as to causes of accidents if they are highly trained in the science of which they testify. *Clark v. Cotten*, 573 S.W.2d 886, 887 (Tex.App.—Beaumont 1978, writ ref'd n.r.e.); *Texaco v. Romine*, 536 S.W.2d 253, 256–57 (Tex.App.—El Paso 1976, writ ref'd n.r.e.); accord *Hooper v. Torres*, 790 S.W.2d 757, 759 (Tex.App.—El Paso 1990, writ denied). In *Clark*, the Court in dictum, stated as follows:

> As for regular police officers, sheriffs, mechanics etc., it generally may be said that they lack such training and experience as would qualify them to make a scientific analysis from physical evidence, regardless of how many accident scenes one may have examined. *Clark*, 573 S.W.2d at 887 quoting note Opinion Testimony of Expert 'Accident Analyst'

Reconstructing Collision Admissible, 38 Tex.L.Rev. 503, 506 n. 14 (1960).

The question of what amount of training is mandated in order to qualify one as an expert in accident reconstruction is one that has continually escaped a "bright line" analysis. In *Clark*, the Court held that an officer who had been with the Department of Public Safety for eight and one-half years, had received seventeen weeks of training and had investigated 350 accidents was not qualified to render an expert opinion regarding the cause of the accident. *Id.* at 887–888. Moreover, in *Estate of Brown v. Masco Corporation*, 576 S.W.2d 105, 108 (Tex.App.—Beaumont 1978, writ ref'd n.r.e.), the Court found an investigating officer to be unqualified where he had only three days of accident investigation training and had investigated only 20 accidents prior to the one at issue. Finally, in *St. Louis Southwestern Railway Company v. King*, 817 S.W.2d 760, 763 (Tex. App.—Texarkana 1991, no writ), the Court concluded it would not have been an abuse of discretion for the trial court to exclude testimony of an officer whose experience and training consisted of eight years with the police department, attendance at the police academy and a seminar on accident investigation. Alternatively, in *DeLeon v. Louder*, 743 S.W.2d 357, 359–60 (Tex. App.—Amarillo 1987), *writ denied per curiam*, 754 S.W.2d 148 (Tex.1988), a state trooper who investigated the accident and who had accident reconstruction training and taught accident investigation was qualified by his training and investigative experience to offer opinion as to a factor contributing to an accident.[1] In the instant case, the evidence establishes that Gilbert Mier, at the time of trial, had been employed by the Southern Pacific Police Department for a period of approximately nine years. On direct examination, Mier testified that he is licensed in both Texas and New Mexico and that in Texas, he holds the highest level of peace officer certification. The record further reveals that Mier completed course work on acci-

---

1. Although, the Court in *DeLeon* noted a distinction between an expert testifying as to an "ultimate issue" and one testifying as to a "contributing factor" regarding cause, no such distinction is currently recognized. *Louder v. DeLeon*, 754 S.W.2d 148, 149 (Tex.1988) (per curiam).

dent investigation and reconstruction while enrolled in the El Paso Police Academy. Moreover, Mier received "in-service" training while employed with Southern Pacific which included "additional instruction and guidance ... in terms of accident investigation and reconstruction." This additional training focused on railroad accidents. Mier further testified that he had investigated accidents for Southern Pacific, was the investigating officer for this particular accident and had previously investigated train-pedestrian accidents.

However, when taken on voir dire, as well as cross-examination, Mier admitted that he had no formal training related to train-pedestrian collisions or railroad accident reconstruction, but only traffic accidents. To that extent, he admitted that his formal training regarding traffic accident investigation and reconstruction was limited to that which he received as part of the regular training at the El Paso Police Academy.

In view of the above case law, we find that the trial court abused its discretion in permitting Mier to testify as to the ultimate issue, i.e., the cause of the accident. The "expert" opinion rendered by Mier was not limited to non-technical aspects of accident reconstruction, see *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 483 (Tex.App.—Corpus Christi 1990, writ denied). Moreover, because there was no showing that officer Mier was specifically qualified to express his opinion because of any scientific, technical or other specialized knowledge not generally possessed by layman, based on testimony received by the jury prior to the time Mier testified, the jury was in as good a position as Mier to form an opinion as to the cause of the accident. *Monsanto Company v. Johnson*, 675 S.W.2d 305, 311 (Tex.App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e. per curiam*, 696 S.W.2d 558 (Tex.1985).

■ Having determined that the trial court abused its discretion in permitting the testimony of Gilbert Mier, we must next determine whether Mier's testimony was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See Hooper*, 790 S.W.2d at 761; *Estate of Brown*, 576 S.W.2d at 108.

The record shows that Mier testified that in his opinion, the deceased's tennis shoe got caught on a rail, spike or railroad tie while he was on or near the train and that he then fell in between two cars and was run over being decapitated in the process. Thus, based on Mier's testimony alone, there was an inference that the deceased may have been negligent in attempting to board the train or cross in front of it. Although Appellants objected to this opinion testimony, the record shows that Appellants elicited the substance of Mier's opinion during direct examination of their own expert, Sam Kramer. Moreover, the police report containing Mier's opinion as to cause was introduced and admitted into evidence without objection, once by the Appellee and later by the Appellants. It is well settled that error in the admission of evidence over a party's objection is rendered harmless where the objecting party has allowed the introduction of the same or similar evidence on another occasion without objection. Tex.R.App.P. 81(b)(1); *C & H Nationwide Inc. v. Thompson*, 810 S.W.2d 259, 268 (Tex.App.—Houston [1st Dist.] 1991, no writ).

In addition, despite the testimony of Mier, Appellants had previously presented the testimony of their expert, Sam Kramer. Unlike Gilbert Mier, the record shows Kramer to be highly qualified and extensively trained in railroad safety and railroad accident investigation. Kramer testified that he reviewed all the available documentation, visited the site and reached a conclusion directly opposite to Mier. Kramer testified that it was nearly impossible for someone to attempt to board a train, fall between two cars and only receive injury to one part of the body. Kramer further testified that as a general rule, when someone falls between two cars, as Mier's report suggested, there is a resulting injury to the entire body. Consequently, Kramer opined that the deceased had tripped over some debris, struck his head on the tracks and was then run over

by the train and decapitated. Furthermore, Kramer was of the opinion the crew failed to keep a proper lookout prior to the accident and that the railroad had not kept the premises in a reasonably safe condition. Thus, as a result of the testimony of Appellee's defense expert, the jury had credible testimony completely contrary to that of Appellants' expert as the cause of the fatal accident. Finally, the jury heard compelling testimony from Dr. Jose Maria Ruffier, the doctor who conducted the post mortem examination of the deceased. Dr. Ruffier testified, based upon reasonable medical probability, that the deceased was intoxicated at three times the legal level, and was thus highly impaired, probably walking with a "staggering gait" and suffering from "marked mental confusion." He concluded that the deceased could have fallen down on his own.

We have examined the entire record and find that in light of the above testimony by Dr. Jose Maria Ruffier, Mier's opinion did not cause and was not reasonably calculated to have caused the rendition of an improper verdict and thus, any error in permitting his testimony is harmless. Accordingly, Point of Error No. Three is overruled.

◼◼◼◼ In Appellants' fourth point of error, they assert the trial court erred by disallowing specific testimony by their expert, Sam Kramer, concerning alleged violations of Southern Pacific's rules and regulations. Although the trial court found Kramer to be qualified as an expert in accident reconstruction, the court found him unqualified to testify regarding Southern Pacific's safety rules and regulations after Kramer admitted he had not been recertified in those rules since his original certification in 1973. Although Appellants made their bill of exception by taking Kramer on voir dire, they failed to elicit and bring before this Court the substance of Kramer's testimony regarding those rules and any alleged violations by Southern Pacific. Error is not preserved as to exclusion of evidence unless the complaining party supplies the appellate court with the substance of the evidence that would

have been admitted and shows its relevancy. *Penwell v. Barrett*, 724 S.W.2d 902, 907 (Tex.App.—San Antonio 1987, no writ). To properly pass on the question of the exclusion of testimony, the record should indicate the questions that would have been asked, what the answers would have been and what was expected to be proved by those answers. *Dames v. Strong*, 659 S.W.2d 127, 132 (Tex.App.—Houston [14th Dist.] 1983, no writ). The Appellants have failed to properly preserve error, and thus nothing is presented for review. Point of Error No. Four is overruled.

◼◼◼◼ In Appellants' fifth and final point of error, they contend there is factually insufficient evidence to support the jury's finding in favor of Southern Pacific.

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Fuentes v. McFadden*, 825 S.W.2d 772, 776 (Tex. App.—El Paso 1992, no writ). When assessing a factual insufficiency point, the reviewing court cannot substitute its conclusions for those of the jury. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). Indeed, if there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Fuentes v. McFadden*, 825 S.W.2d at 776; *Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d at 796. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820 (1947).

As noted above, Appellants sought to establish that the deceased had tripped over a piece of steel banding, struck his

head and was later decapitated by the passing train. The testimony of Appellants' expert, Sam Kramer, supported that theory. Additional evidence in support of the above theory as to the cause of the accident came from Appellants' testimony of an investigating officer, Eric Shelton, as well as from the deceased's two brothers. However, none of the above three individuals witnessed the fatal accident, but rather, arrived on the scene at a point later in time. The record is clear that testimony was conflicting as to whether the steel banding was lying loose or was stuck in the ground. Shelton testified that the banding was lying loose several feet from the deceased. Alternatively, both brothers testified that the banding was stuck in the ground, one to three feet from the deceased, but that they pulled it out prior to the police arriving. In either event, it is apparent from the record that the steel banding was not wrapped around the feet of the deceased. Shelton further testified that he concluded the deceased had tripped over the steel banding, basing his conclusion simply upon what the deceased's brother, Jose Lopez, had communicated to him. Jose Lopez, on the other hand, simply assumed the deceased had tripped. As noted earlier, there were no eyewitness testimony as to the actual accident. As noted earlier, Kramer reviewed all the pertinent documents and concluded that it would be difficult for the deceased to have been attempting to cross the tracks and then to have fallen in between the cars as such a fall would have resulted in more extensive body damage. Kramer speculated that the railroad had left debris near the track and that the railroad had failed to keep a proper lookout once the deceased had tripped and fallen across the tracks. Of greater significance however, is Kramer's admission that his opinion was based in part on the police report prepared by Eric Shelton and not on the existence of any independent physical evidence which would tend to show that the deceased hit his head and was rendered unconscious. In that regard, Appellants' evidence as to the cause of the accident was circumstantial at best and the theory as to such cause was based on speculation and conjecture. In the alternative, testimony by the crew members of the Southern Pacific train was introduced contending that they were unaware of the accident at the time of its occurrence, that if they had struck anything they would have heard something, that they would have seen someone walking in front of the train, that the crew would have been facing forward at the time of the accident and that the train's whistle was sounded before all crossings. Finally, there is conflicting evidence concerning whether the deceased was run over by the front of the train or whether he later fell under the train somewhere behind the engines.

In view of the above evidence and the conflicts therein, the jury could have concluded that Lopez fell due to being in an intoxicated state, making any alternative theories of *how* he fell less significant. We have examined all of the evidence and find that there is factually sufficient evidence to support the jury's finding. Moreover, in viewing the entire record before this Court, we find that the jury finding in question is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, Point of Error No. Five is overruled. Having overruled each of Appellants' points of error, the judgment of the trial court is affirmed.