Opinion issued April 16, 2009
















In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00242-CV




JACK DANIEL D/B/A DANIEL’S RENTALS, Appellant

V.

EDWIN RICHARDSON D/B/A BLUE SAPHIRE LAWN CARE, Appellee




On Appeal from the County Court at Law No. 1
Brazoria County, Texas
Trial Court Cause No. CI033595



 
 
 
MEMORANDUM OPINION
          In two points of error, Jack Daniel, appellant, complains that the trial court
erred by failing to submit a proper charge to the jury and that the evidence supporting
the jury’s verdict against him is legally insufficient. We affirm.
Factual Background
          Edwin Richardson d/b/a Blue Saphire Lawn Care, (“Richardson”) brought suit
against Jack Daniel d/b/a Daniel’s Rentals (“Daniel”) and Ferris Industries, Inc.
(“Ferris”). Richardson’s petition alleged that Daniel was an “authorized dealer and
representative of Ferris.” Richardson purchased a lawn mower, which had been
manufactured by Ferris, from Daniel and he alleged that Daniel and Ferris
misrepresented the characteristics of the mower during that sale. Richardson sought
to recover damages and attorneys’ fees under the Texas Deceptive Trade Practices
Act (“DTPA”). Daniel answered with a general denial, and also asserted that
Richardson’s own negligence, or that of third parties, was the cause of Richardson’s
alleged damages. Richardson’s claims against Daniel were severed from those
against Ferris and the case against Daniel proceeded to trial. 
          At trial, Richardson testified that he owned and operated Blue Saphire Lawn
Care and that in 2001 he purchased a Derby Stallion motor from Daniel’s Rentals. 
Richardson explained that he had previously purchased a Husky motor from another
dealer, but had become dissatisfied with it. He brought the Husky into Daniel’s
Rentals for service. Richardson stated that he informed Daniel that he was both a
commercial and a residential mower, and that he had recently started a lawn mowing
business. According to Richardson, Daniel then informed him he had recently test-driven the Derby mower and it was “the best commercial motor that [Daniel] tried at
the mower show in Houston.” Based in part on this representation, Richardson
purchased a Derby mower from Daniel. Richardson also testified that Daniel
informed him that the mower had a two-year warranty, was “the best commercial
mower on the market” and would cut at a speed of seven miles per hour. 
Richardson’s son Michael, who worked in the lawn mowing business with his father,
was also present when Richardson purchased the mower, and he testified that
Richardson informed Daniel that he needed the machine for commercial lawn
mowing, and that Daniel represented the machine was a commercial-grade lawn
mower and was the best machine he had to offer. Michael testified that, in his
opinion, the machine his father purchased from Daniel was not commercial grade. 
          As part of the purchase, Richardson signed a document entitled “Purchaser’s
Warranty Registration.” That document states that “Purchaser’s signature affirms that
he has received the owner’s manual . . . .”
          In addition, it states

          PURCHASER’S SIGNATURE INDICATES:

          . . .
 
          •        Receipt of owner’s manual
          •        Clear understanding of warranty
 
          The Warranty Registration was signed by both Daniel and Richardson. At trial,
Richardson denied receiving a copy of the Warranty but admitted that he signed it. 
On the reverse, the Warranty stated it was for twelve months of commercial use and
twenty-four months for residential use. Richardson testified, however, that Daniel
assured him that the Warranty was for twenty-four months. Richardson also stated
that the owner’s manual he received from Daniel was almost illegible and “stuck
together, molded and torn.” 
          Shortly after purchasing the mower, Richardson began to experience problems
with it. After three or four days of use, Richardson stated that the mower began to
leave stripes of uncut grass after passing through an area. Richardson introduced a
photograph that he described as showing uncut sections left by the mower he
purchased from Daniel. Richardson returned the mower to Daniel for service, and he
testified that Daniel recommended replacing the blade. According to Richardson,
however, replacing the blade did not cure the problem and he soon encountered other
difficulties with the mower. Richardson testified that one part, a “greaser,” fell off
the machine and that Daniel simply told him to “tap it back on” himself, rather than
performing any warranty service. In all, Richardson testified that he took the mower
to Daniel at least six times within three months, and that Daniel failed to perform the
necessary services on the mower. Richardson’s son Michael also testified that
Daniel’s warranty repairs were faulty. Instead of having Daniel continue to perform
work on the mower, Richardson took the mower to another dealer for service. 
Richardson stated that, although the other dealer was able to perform some repairs on
the mower, the machine still continued to cut grass poorly. Further, Richardson
testified that, after bringing the mower in for repairs to Daniel’s shop, it developed
new steering problems. Richardson also testified that Daniel failed to properly
perform the routine maintenance tasks he requested for the mower. On one occasion,
for example, Daniel had installed an improper gas filter that caused the mower to
backfire. Richardson stated that, although Daniel claimed that his shop could perform
the necessary warranty work on the mower, it was his opinion that Daniel was not
actually able to perform such work. Finally, Richardson testified that the cutting
speed of the mower was slower than had been represented to him by Daniel and in the
Ferris literature.
          In his testimony, Daniel denied representing the mower he sold Richardson was
a commercial-grade mower. Instead, Daniel explained that the mower was “a
homeowner’s mower, built in a commercial style, commercial grade, but it is not a
commercial mower.” He also denied that Richardson had informed him that the
mower would be used in his lawn care business. Daniel stated that he did not know
that Richardson intended to use the mower for his lawn care business until after
Richardson had purchased the mower at issue. Daniel testified that, after Richardson
complained the mower was leaving stripes of uncut grass, he examined the mower
and even test-drove it to determine the cause of the problem. According to Daniel,
he made several recommendations to Richardson to eliminate the problem, including
mowing at a slower speed and adjusting the deck of the mower. Daniel stated that,
when he inspected the mower after Richardson brought it in for service, the oil had
not been changed timely and other routine maintenance had not been performed, and
that this could have affected the machine’s performance. In addition, he testified that
mowing too fast would compromise the quality of the machine’s performance. 
According to Daniel, he had tested the mower on at least one occasion and the mower
had performed adequately when properly driven and maintained. Daniel also denied
that the mower had been serviced with an improper filter. 
          After testimony, the court submitted a charge to the jury that included a liability
question on whether Daniel had violated the DTPA, as well as asking the jury to
apportion causation for any damages that Richardson might have suffered between
the following four causes: (1) the acts or omissions of Daniel; (2) the negligence of
Richardson; (3) defects in the construction, design or manufacture of the mower; and
(4) misrepresentations of Ferris. 
          The jury found that Daniel violated the DTPA, awarding Richardson
$10,965.36 in damages for the value of the mower and loss of business income. In
addition, the jury found that 44% of Richardson’s damages were caused by Daniel’s
acts and omissions, 51% were caused by defects in the mower, and 5% were caused
by the misrepresentations of Ferris. The jury also found that Daniel acted knowingly,
but not intentionally, in violating the DTPA. The trial court entered a final judgment 
against Daniel for $ 4,824.75 in actual damages, plus pre- and post-judgment interest,
attorneys’ fees and costs. 
          On appeal, Daniel argues that the trial court erred by failing to submit a
question to the jury asking it to determine Ferris’ liability under Chapter 82 of the
Texas Civil Practice and Remedies Code, and that the evidence supporting the jury’s
verdict is legally insufficient. 
Analysis
Did the trial court err by failing to submit Ferris’ responsibility
under Chapter 82 of the Civil Practice and Remedies Code to the
jury?

          In his first issue, Daniel complains that the trial court failed to submit a liability
question asking the jury to determine whether Ferris, the manufacturer of the mower,
was liable under Chapter 82 of the Texas Civil Practice and Remedies Code. Daniel
also complains that the trial court erred by failing to include a question regarding
Ferris’ proportional responsibility in the jury charge.


 
          Chapter 82 of the Texas Civil Practice and Remedies Code imposes a duty
upon manufacturers to “indemnify and hold harmless” sellers “against loss arising out
of a products liability action,” except for “any loss caused by the seller’s negligence,
intentional misconduct, or other act or omission, such as negligently modifying or
altering the product, for which the seller is independently liable.” Tex. Civ. Prac.
& Rem. Code Ann. § 82.002 (Vernon 2005). The purpose of this section is to
require a manufacturer to indemnify an innocent seller for certain damages and
litigation expenses arising out of a products liability action and to require sellers to
bear the damages and expenses for the losses they cause. Gen. Motors Corp. v.
Hudiburg Chevrolet, Inc., 199 S.W.3d 249, 262 (Tex. 2006).
            Chapter 82 defines a “products liability action” as any action against a
manufacturer or seller for recovery of damages arising out of personal injury, death,
or property damage allegedly caused by a defective product whether the action is
based in strict tort liability, strict products liability, negligence, misrepresentation,
breach of express or implied warranty, or any other theory or combination of theories.
Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2) (Vernon 2005). Richardson’s
lawsuit against Daniel was based on alleged violations of the Texas Deceptive Trade
Practices Act, with Richardson asserting that both the characteristics of the lawn
mower and Daniel’s ability to service that mower had been misrepresented to him
during the sale. At trial, Richardson sought only to recover the economic value of the
contract he entered based upon the misrepresentations (the difference in the amount
he paid for the mower and what the jury believed it to actually be worth) and the
business he lost as a result of not being able to use the mower as he intended. He did
not seek damages “arising out of personal injury, death, or property damage,” and he
therefore did not assert a “products liability” action under Chapter 82. Accordingly,
Chapter 82 did not apply to the lawsuit at issue and the trial court properly denied
Daniel’s request for such a jury question.
          Further, Daniel complains that the trial court failed to submit a question asking
the jury to assess the proportional responsibility of Ferris under Chapter 33 of the
Texas Civil Practice and Remedies Code. We conclude that Daniel has waived this
argument on appeal because he failed to object to the court’s charge on these grounds
at trial. See Tex. R. App. P. 33.1(a)(1) (to preserve complaint for appellate review,
the complaint must be made to the trial court by “a timely request”); Tex. R. Civ. P.
278; Lopez v. S. Pac. Transp. Co., 847 S.W.2d 330, 333 (Tex. App.—El Paso 1993,
no writ) (stating under Rule 278 “purported error regarding an omitted jury
instruction is deemed waived absent the request and tender, in writing, of an
instruction in substantially correct form”). 
          Accordingly, we overrule Daniel’s first issue. 
Was the jury’s finding that Daniel violated the DTPA supported by
legally sufficient evidence?          In his second issue, Daniel alleges that the evidence supporting the jury’s
finding that he violated the DTPA is legally insufficient. Specifically, Daniel
contends that all of the misrepresentations that he is alleged to have made were
actually made in written materials furnished by Ferris, and that he merely acted as a
conduit in passing on this information to Richardson. 
          In deciding a legal-sufficiency challenge, we determine whether there is
evidence that would enable reasonable and fair-minded people to reach the verdict
under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). To make
this determination, we (1) credit all favorable evidence that reasonable jurors could
believe; (2) disregard all contrary evidence, except that which they could not ignore;
(3) view the evidence in the light most favorable to the verdict; and (4) indulge every
reasonable inference that would support the verdict. Id. at 822, 827. But, we may not
disregard evidence that allows only one inference. Id. at 822. The trier of fact is the
sole judge of the credibility of the witnesses and the weight to give their testimony.
Id. at 819. So long as the evidence falls within the zone of reasonable disagreement,
we may not substitute our judgment for that of the fact-finder. Id. at 822.
          On appeal, Daniel alleges that “there was no statement made by Mr. Daniel,
and identified by Mr. Richardson as being one of his alleged violations, that was not
dependent on a written statement from the manufacturer.” We disagree. The jury
charge asked the jury to determine whether Daniel committed a “[f]alse, misleading
or deceptive act or practice,” defined as any of the following
a. [C]aus[ing] confusion or misunderstanding as to the source,
sponsorship, approval or certification of goods or services;
 
b. [R]epresent[ing] that goods or services have . . . characteristics, . . .
or qualities which they do not have . . .;
 
c. Representing that good or services are of a particular standard,
quality, or grade or that goods are a particular style, [or] model, when
they are another;
 
d. Representing that an agreement confers or involves rights, remedies
or obligations which it does not . . .;
 
e. Representing that a guarantee or warranty confers or involves rights
or remedies which it does not have or involve;
 
f. Fail[ing] to disclose information concerning goods or services which
was known at the time of the transaction and such failure to disclose
such information was intended to induce the consumer into a transaction
into which the consumer would not have entered had the information
been disclosed;
 
g. Misrepresent[ing] that the mower . . . was not a commercial grade
mower;
 
h. [Selling] a mower that fails to properly cut grass and lawns as
represented; [or]
 
i. Fail[ing] to disclose . . . that Jack Daniel is unable to fulfill the
necessary warranty work needed to repair Ed Richardson’s mower.
          We find that there is legally sufficient evidence to support the jury’s finding
that Daniel violated the DTPA in at least one of the above ways. For example,
Richardson testified that he brought the mower into Daniel’s shop several times for
warranty work that Daniel failed to perform. While Daniel disagreed with
Richardson’s conclusions and contended that his shop had properly performed the
work that Richardson requested, the jury was free to believe the testimony of
Richardson over that of Daniel. See City of Keller, 168 S.W.3d at 822. 
          In addition, the charge as submitted allowed the jury to find Daniel liable for
a violation of the DTPA if he sold a mower that “fail[ed] to properly cut grass and
lawns as represented.” Richardson introduced evidence at trial that the mower he
purchased from Daniel was both slower and less accurate than either Daniel or the
manufacturer had represented. Richardson also introduced photographs showing
what he claimed were stripes of uncut grass left by the mower he purchased from
Daniel. While Daniel testified that these photographs related to a different mower,
the jury was again free to disbelieve his testimony and instead credit Richardson’s. 
Id. Finally, aside from the question of whether the manufacturer’s literature
contained any misrepresentations, Richard unequivocally testified that Daniel
represented to him that the mower at issue was commercial grade and suitable for use
in his lawn mowing business. While Daniel denied having made such a statement,
Richardson’s testimony is legally sufficient to support the jury’s verdict. Id. 
Accordingly, we overrule Daniel’s second issue. 
Conclusion
          We hold that the trial court did not err by failing to submit a question regarding
Ferris’ liability under Chapter 82 of the Texas Civil Practice and Remedies Code. 
Further, the jury’s finding that Daniel violated the Texas Deceptive Trade Practices
Act is supported by legally sufficient evidence. We therefore affirm the judgment of
the trial court.
 
                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Hanks.