In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00187-CV**

_____

**IN RE COMMITMENT OF JUAN ANTONIO FUENTES**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-08-08774 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Juan Antonio Fuentes as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). A jury found that Fuentes is a sexually violent predator, and the trial court signed a final judgment and order of civil commitment. In two appellate issues, Fuentes challenges the trial court's exclusion of testimony from his expert regarding diagnostic criteria for pedophilia and the factual sufficiency of the evidence that he has a "mental condition" or "serious difficulty controlling behavior[.]" In a supplemental issue, Fuentes also argues that the

1

"Texas Supreme Court's recent construction of the SVP civil commitment statute renders the statute facially unconstitutional under the Fourteenth Amendment's due process clause." We affirm the trial court's judgment.

ISSUE ONE

In his first issue, Fuentes challenges the trial court's exclusion of testimony from his expert witness, psychologist Dr. Marisa Mauro, regarding the diagnostic criteria for pedophilia. Specifically, Fuentes complains of the trial court's exclusion of testimony from Mauro concerning the basis of her opinion that Fuentes is not a pedophile.

Mauro testified that although Fuentes's first victim was approximately four-and-one-half years old and the second victim was approximately eleven years old, she did not diagnose Fuentes with pedophilia. Mauro testified that "[t]he incidents were about 15 years apart, and pedophilia is a recurrent deviant arousal to prepubescent children, and I didn't find that that arousal was recurrent. They were specific isolated incidents 15 years apart." Mauro explained that according to the DSM, "recurrent" means something that has happened continuously for six months. According to Mauro, "not all child molesters are pedophiles. That's widely accepted in research, and one reason for that is that there might be an isolated incident or two over a long period of time versus recurrent behavior, urges,

2

fantasies, what you see in . . . pedophilia." Mauro characterized Fuentes as a child molester, but not a pedophile.

On cross-examination, Mauro explained that she did not find Fuentes to have a behavioral abnormality. Mauro testified that pedophilia is a chronic condition and would be a risk factor, but she did not diagnose Fuentes with pedophilia. According to Mauro, Fuentes did not meet the criteria for pedophilia even though Fuentes admitted he was sexually aroused by performing oral sex on a four-year-old and an eleven-year-old. Mauro explained that at her deposition, she had testified that she did not diagnose Fuentes with pedophilia because he did not meet the "continuous requirement for six months[,]" but admitted that the word "continuous" is not contained in the DSM-IV. The State began questioning Mauro concerning the meaning of the word "recurrent" in the DSM-IV, and the following exchange occurred:

> Q.  And the modification that recurrent somehow modifies over a period of at least six months, where do you get that from?

> A.  Well, there's been a lot of controversy over this, whether it needs to actually be in the six-month period of continuous time or over a longer period of time; and actually the supervisor for the work group in the DSM-V has actually --

> [State's counsel]: Objection, relevance.

> THE COURT:  Well, you asked her where this comes from.

3

[State's counsel]: No, not from – that's not even published.

THE COURT:  What was your question exactly?

[State's counsel]:  Where does her idea of "recurrent" as it applies to six months come from?

THE COURT:  I think she's given it to you.

[State's counsel]:  That hasn't even been published yet.

THE COURT:  Well, that's okay.  You asked the question. You want to withdraw the question?  I mean, she's going to give you the answer she wants to give you to your question.

[State's counsel]:  Fine.  I'll withdraw the question.

Q. [by State's counsel] What is your definition of the word recurrent?

A.  Recurrent is something that happens a few times, I guess, something that you re[-]experience.

The State's cross-examination of Mauro later continued as follows:

Q. So Dr. Dunham diagnosed [Fuentes] with pedophilia, correct?

A. Right.

Q. And Dr. McGarrahan diagnosed him with pedophilia, correct?

A. Right.

Q. And Dr. Self diagnosed him with pedophilia.

A. Right.

4

Q. But somehow you've read this and interpreted this correctly?

A. Yes.

Q. And everyone else is doing it wrong?

A. As I had mentioned before, there's a divergent opinion on the six-month criteria.
. . .

Q. And you would tell this jury that Mr. Fuentes has been sexually aroused by an 11 year old, a four year old[,] and a one year old over the span of 13 years, but he's not a pedophile?

A. Right.

Q. Just a child molester?

A. Right.

Q. And you would also tell this jury that Mr. Fuentes has been sexually aroused by an 11 year old, a four year old[,] and a one year old over the span of 13 years, but he does not have a behavioral abnormality.

A. Right.

During re-direct examination, the following exchange occurred between Mauro and Fuentes's counsel:

Q. With regards to the fact that you did not diagnose Mr. Fuentes with pedophilia, what is the support for your position, that it has to be recurrent over six months?

A. It isn't the --

5

[State's counsel]: Objection, relevance. I wasn't allowed to ask this.

[Fuentes's counsel]: She withdrew it.

THE COURT: We're not going to go into any books that haven't been published.

[Fuentes's counsel]: Well, if she can answer without talking about any books that haven't been published.

A. Right. It's in a published report to the --

[State's counsel]: Objection, relevance.

THE COURT: Show the published report to me so I can read it. Okay?

[Fuentes's counsel]: Do you have it?

THE WITNESS: I don't have it with me.

THE COURT: Okay, then show that it's been published and that you can provide [it to] me right now.

THE WITNESS: I'm sorry.

[Fuentes's counsel] That's fine, Dr. Mauro, but you're confident that you're applying the diagnostic criteria for pedophilia properly in your evaluation of Mr. Fuentes; is that right?

A. Yes.

Fuentes complains that during the above exchanges, the State "successfully prevented Dr. Mauro from testifying about the basis of her opinion, which was grounded in research, that not all child molesters are pedophiles, and that two

6

isolated incidents separated by more than a decade are not sufficient alone to diagnose a person with pedophilia."

We review the exclusion of expert testimony for abuse of discretion. *In re Commitment of Day*, 342 S.W.3d 193, 218 (Tex. App.—Beaumont 2011, pet. denied); *see also Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). An appellate court should not determine whether a trial court abused its discretion in excluding evidence unless the complaint has been preserved for review. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex. 1984); *Sink v. Sink*, 364 S.W.3d 340, 346 (Tex. App.—Dallas 2012, no pet.). To preserve error on appeal, a party must present to the trial court a timely request, motion, or objection, wherein the party states the specific grounds therefor, and obtain a ruling that appears in the record. Tex. R. App. P. 33.1(a); *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999).

To challenge the trial court's exclusion of evidence on appeal, the complaining party must present the excluded evidence to the trial court by an offer of proof unless the substance of the evidence is apparent from the contest within which the questions were asked. Tex. R. Evid. 103(a); *see* Tex. R. App. P. 33.1; *see also Day*, 342 S.W.3d at 199; *In re Commitment of Briggs*, 350 S.W.3d 362, 368 (Tex. App.—Beaumont 2011, pet. denied). "'[T]he record should indicate the

7

questions that would have been asked, what the answers would have been[,] and what was expected to be proved by those answers.'" *Day*, 342 S.W.3d at 199-200 (quoting *Lopez v. S. Pac. Transp. Co.*, 847 S.W.2d 330, 336 (Tex. App.—El Paso 1993, no writ)). When the complaining party fails to make an offer of proof in the trial court, the party must introduce the excluded testimony into the record by a formal bill of exception. Tex. R. App. P. 33.2. Without an offer of proof, an appellate court cannot determine whether the exclusion of the evidence was harmful. *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.); *see also In re Commitment of Dees*, No. 09-11-00036-CV, 2011 WL 6229555, at *5 (Tex. App.—Beaumont Dec. 15, 2011, pet. denied) (mem. op.).

The record reflects that Fuentes did not make an offer of proof in the trial court concerning the excluded testimony, nor did Fuentes offer a formal bill of exception. The record does not show what questions would have been asked or what the answers would have been, and the substance of the excluded evidence was not apparent from the content. Therefore, Fuentes failed to preserve the issue for review. *See* Tex. R. App. P. 33.1(a); Tex. R. App. P. 33.2; *Briggs*, 350 S.W.3d at 368. Accordingly, we overrule issue one.

## ISSUE TWO

In his second issue, Fuentes challenges the factual sufficiency of the evidence that he has a mental condition or serious difficulty controlling his behavior. Specifically, Fuentes argues that the State's evidence that he has a mental condition or serious difficulty controlling his behavior was so inadequate that the risk of injustice necessitates a new trial. Fuentes asserts that the testimony from the State's experts was conclusory and speculative.

The State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213.

A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a) (West 2010). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. at § 841.002(2)

9

(West Supp. 2012). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

Forensic psychologist Dr. Antoinette McGarrahan testified that the State asked her to provide an opinion concerning whether Fuentes has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. McGarrahan testified that in performing her evaluation of Fuentes, she reviewed a set of records referred to as the "referral packet[,]" interviewed Fuentes in person for approximately two and a half hours, and scored various actuarial instruments. McGarrahan testified that this methodology is typically used by experts in her field, and this methodology is "standard" and "recommended." According to McGarrahan, the records she reviewed pertaining to Fuentes included TDCJ records, classification records, disciplinary records, medical records, and psychiatric records, as well as Fuentes's unit file, parole records, penitentiary packets, employment records, victim statements, records from evaluations performed by other examiners, and Fuentes's deposition.

McGarrahan explained that she relied upon the facts and data contained in the records in forming the basis of her opinion. McGarrahan conducted her evaluation in accordance with her training as a psychologist and in accordance with accepted standards in the field of forensic psychology. McGarrahan testified that based upon her education, training, experience, and the methodology she applied, she concluded that Fuentes suffers from a behavioral abnormality that makes him likely to commit a predatory act of sexual violence. McGarrahan explained that Fuentes displayed "significant indications of sexual deviancy[,]" antisocial personality traits, borderline personality traits, and risk factors.

McGarrahan diagnosed Fuentes with pedophilia, antisocial psychopathic borderline personality traits, and a large number of risk factors. McGarrahan testified that sexual deviancy "is a very strong predictor of one's risk to engage in sexually violent offenses in the future." According to McGarrahan, Fuentes's sexual deviancy is "predominantly pedophilia[,]" and she explained that she used the DSM-IV in arriving at her pedophilia diagnosis. McGarrahan testified that the records she reviewed show that Fuentes's first victims were a sister and brother, who were ages four and one-and-a-half, respectively. According to McGarrahan, the risk factors for the offense were a male victim, a victim under age four, and the

11

fact that the victims were strangers to Fuentes. McGarrahan also found it significant that Fuentes lied to his family about the nature of his offense.

McGarrahan testified that Fuentes' next offense occurred a number of years later, when he performed oral sex on an eleven-year-old male who was the son of a co-worker. McGarrahan explained that Fuentes gave inconsistent accounts concerning the offense, and that Fuentes also tended to blame the victim. McGarrahan explained that Fuentes met the diagnostic criteria for pedophilia because "[w]e have two known instances, one in 1984 and one in 1998. That's 14 years. That clearly is occurring across at least six months." According to McGarrahan, the DSM-IV does not require that the person sexually offend against a child or have sexually arousing fantasies continuously for six months.

McGarrahan opined that pedophilia is one of the "strongest, most potent risk factors of someone engaging in sexually violent offenses in the future, so pedophilia is [Fuentes's] primary sexual deviancy." McGarrahan opined that Fuentes has antisocial personality traits and borderline traits, such as impulsivity, dysfunctional coping mechanisms, pathological lying, and poor work history, but she "did not give [Fuentes] a full diagnosis of a personality disorder." McGarrahan explained that Fuentes had a moderate level of psychopathic characteristics, but was not a psychopath.

12

McGarrahan scored the Static 99-R and the Minnesota Sex Offender Screening Tool Revised (MnSOST-R), and she testified that Fuentes's score on the Static 99-R indicated a moderately high level of risk for recidivism, and his score on the MnSOST-R reflected "a high level of likelihood for engaging in a sexually violent offense in the future." In evaluating Fuentes, McGarrahan also noted that Fuentes had incurred a number of major and minor disciplinary cases during his incarceration. McGarrahan testified that she was also concerned that Fuentes had not received sex offender treatment. McGarrahan summarized her testimony concerning behavioral abnormality as follows:

> I think it's the three broad areas that we talked about first today, which is his sexual deviancy which certainly encompasses the pedophilia, but possibly also adolescent males, which is present today and ongoing, his personality traits that make him impulsive, irresponsible[,] and likely to not follow the rules in combination with the very large number of risk factors that we've talked about. I think together taken as a whole has led me to my opinion that he does have a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

Forensic psychiatrist Dr. David Self testified that the State retained him to determine whether Fuentes has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. During the course of his evaluation, Self reviewed records, including a referral packet, and interviewed Fuentes for approximately two hours. Self explained that the records he reviewed are of the

13

type relied upon by experts in his field for such evaluations, and that he relied upon the facts and data contained in the records in forming the basis of his opinion. Self testified that he conducted the evaluation in accordance with his training as a psychiatrist and with accepted standards in the field of forensic psychiatry. Self opined that Fuentes suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Self explained that Fuentes "suffers from a sexual disorder of paraphilia, we call it, where you have abnormal focus of sexual arousal, gratification behavior. In this case, I think it's pedophilia, which is defined . . . as sexual arousal or attraction or behavior towards prepubescent children . . . ." According to Self, Fuentes's "sexual criminal history" is significant. Self testified that Fuentes has borderline personality disorder, which is also significant in determining whether Fuentes has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Self opined that Fuentes's sexual offenses, coupled with his pedophilia, are "the prime evidence we have that he has a sexual arousal that he will carry into action regarding prepubescent children." Self identified Fuentes's offenses against a four-year-old girl, one-year-old boy, and eleven-year-old boy as supportive of the diagnosis of pedophilia, as well as Fuentes's admission that he was sexually

14

aroused by the offenses. Self also testified that Fuentes sometimes denied responsibility for his offenses and instead blamed the victims.

According to Self, Fuentes's sexual interest in prepubescent children persisted for longer than six months, and pedophilia is "a chronic condition" that "doesn't go away." Like McGarrahan, Self explained that all of the sex acts need not occur within six months to meet the DSM-IV criteria for pedophilia. According to Self, Fuentes's lying and impulsivity were indicative of his borderline personality disorder, as are Fuentes's fighting while in prison and his depressive episodes. Self opined that Fuentes's antisocial traits do not "contribute much in this case" toward the determination of whether Fuentes suffers from a behavioral abnormality. Self explained that Fuentes has some elements of psychopathy, lies, and lacks remorse, but Fuentes is not a psychopath. When asked whether Fuentes's emotional or volitional capacity has been affected to the extent that Fuentes is predisposed to commit a sexually violent offense, Self testified,

> One, his predilection for prepubescent children, I mean, the fact that they arouse him and excite him; the fact that he has shown that he is tolerant of assault on those children . . .; the fact that he is highly impulsive as a result of his personality disorder; the fact that he's as emotionally unstable as he is and in need of reassurance.

According to Self, Fuentes's lack of sex offender treatment also raises his risk. Self noted that Fuentes lacked genuine remorse, and Fuentes engaged in

denial and minimization. Self identified male victims and stranger victims as additional risk factors for Fuentes. Self testified that Fuentes's "non-negative" factors included his ability to remain free on bond, his age, and his employment history. Self opined that Fuentes's risk of sexual re-offense is moderately high.

As previously discussed, Fuentes argues that the experts' testimony was too speculative and conclusory to support a finding that he suffers from a behavioral abnormality or has serious difficulty controlling his behavior. We disagree. Doctors McGarrahan and Self are both licensed in their respective fields. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *14 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). They interviewed Fuentes and reviewed records regarding his background, offenses, and incarceration. *See id*. McGarrahan administered actuarial tests and testified that these types of tests are generally accepted in her field. The experts relied on the types of records relied on by experts in their respective fields and performed their evaluations in accordance with their training as professionals in their respective fields. *See id*. The doctors based their opinions on the facts and data gathered from the records they reviewed, their interviews with Fuentes, and the risk assessments they conducted. *See id*. They explained in detail the facts and evidence they found relevant in forming their opinions and how those facts played a role in their

16

evaluations. *See id*. Both experts concluded that Fuentes suffers from a behavioral abnormality as defined by the SVP statute. *See id*. The experts' testimony is not so conclusory or speculative as to be completely lacking in probative value. *See id*.

In addition to the experts' opinions that Fuentes has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, the jury heard evidence of Fuentes's risk factors, actuarial test scores, criminal history, sexual offenses, and diagnoses. The jury was entitled to infer current serious difficulty controlling behavior based on Fuentes's past behavior, Fuentes's own testimony, and the experts' testimony. *See id.* at *13; *see also In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at *20 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.). The jury could reasonably conclude that Fuentes has serious difficulty controlling his behavior and is likely to commit predatory acts of sexual violence directed toward individuals for the primary purpose of victimization. *See In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied); *see also Almaguer*, 117 S.W.3d at 506; *Burnett*, 2009 Tex. App. LEXIS 9930, at *13. Such conclusions are implicit in a finding that Fuentes suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Grinstead*, 2009 Tex. App. LEXIS 228, at *16; *see also In re Commitment of*

17

*Bailey*, No. 09-09-00353-CV, 2010 Tex. App. LEXIS 6685, at **12-13 (Tex. App.—Beaumont Aug. 19, 2010, no pet.) (mem. op.).

Weighing all of the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. Accordingly, we overrule Fuentes's second issue.

Supplemental Issue

In a supplemental issue, Fuentes argues that the Texas Supreme Court's decision in *In re Bohannan*, ____ S.W.3d ____, No. 10-0605, 2012 Tex. LEXIS 734 (Tex. Aug. 31, 2012) (not yet released for publication) interpreted portions of the SVP statute in such a way as to render the statute facially unconstitutional. In *Bohannan*, the Texas Supreme Court explained that a behavioral abnormality is a condition that predisposes sexually violent conduct. *Bohannan*, 2012 Tex. LEXIS 734, at *14. The Court explained that "condition and predisposition are one and the same[,]" and "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Id*. at **14, 16-17.

Fuentes contends that *Bohannan* relieves the State of the burden of demonstrating that a person has a mental illness. However, this Court has previously concluded that "*Bohannan* did not eliminate any proof required by the

18

statute for a sexually-violent-predator finding, nor did the Supreme Court change the statute or render it unconstitutional." *See In re Commitment of Anderson*, ____ S.W.3d ____, No. 09-11-00613-CV, 2013 Tex. App. LEXIS 602, at *17 (Tex. App.—Beaumont Jan. 24, 2013, no pet. h.) (not yet released for publication). For the same reasons articulated in *Anderson*, we reject Fuentes's arguments and affirm the trial court's judgment.

    AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on February 19, 2013
Opinion Delivered February 28, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.